CITY OF GREENVILLE v. KEMMIS.

1. JURISDICTION.—This Court has no jurisdiction to review questions of fact on appeal from order in General Sessions made in appeal from municipality.

2. GAMBLING—MUNICIPALITY—CONSTITUTION.—THE CITY OF GREENVILLE, under its charter, may by ordinance make the permission of

gambling in a private room an offense punishable by fine or imprisonment, and* the fact that the legislature has not made such acts criminal, cannot effect the right of the municipality to do so, nor make it unconstitutional. *Heise* v. *Town Council,* 6 Rich., 404, *distinguished from this.*

3. IBID.—WORDS AND PHRASES.—A private rented "room," under the ordinances of the city of Greenville against gambling, is included in the word "house."

4. FINE not excessive under the circumstances.

Before WATTS, J., Greenville, February, 1900.    Affirmed.

Indictment by city of Greenville against Roy Kemmis for permitting gambling in his private room.   From order in general Sessions Court dismissing appeal from judgment of mayor, the defendant appeals on the following exceptions :

"1.   That his Honor erred in confirming the decision of the mayor in finding the defendant guilty, when there was no testimony to show that the alleged gaming took place in a house, place or inclosure belonging to defendant, or in a place used for gaming, or that there was any evidence of any gaming on the day of arrest, when defendant had no notice of the charge that gaming had taken place on another day. 2. His Honor erred in confirming the finding of the mayor in finding the defendant guilty of keeping a gaming house when the testimony, even if competent, showed no more than that defendant had engaged in a single game of cards, which did not constitute the offense charged.   3. His Honor erred in confirming the judgment of the mayor, when he should have held that the maximum fine allowed by ordinance was in this case excessive and unjust.   4. His Honor erred in confirming the decision and judgment of the mayor, when he should have held that as defendant was not guilty of the charge under the laws of South Carolina, which laws have defined gaming houses; and defendant not being the keeper of a public house, as defined by the said laws of the State, defendant could not be guilty under an ordinance which enlarges the offense beyond the limit set by the legislature.   5. Because his Honor erred in holding that the city

ordinance, under which the defendant was convicted, was constitutional and valid, and that the mayor had jurisdiction of an offense created by said ordinance, when his Honor should have held that the ordinance was void, inoperative and unconstitutional; and the mayor had no jurisdiction of the offense created thereby; and his Honor should have held that when the law of gaming is defined and the punishment prescribed by the laws of the State, that a municipal corporation is not authorized to suppress any gaming not prohibited by said State laws, but it is confined to the use of such means as may be within its power to enforce, within its limits, the law as defined and specifically laid down by the legislature."

*Mr. Wm. G. Sirrine,* for appellant, cites: *Ordinance is unconstitutional and invalid:* 26 S. C., 290; 3 Bam. & C., 183; 42 Md., 403; 6 Rich. L., 404; 51 Am. Dec., 465; 143 Mass., 598; 1 McM., 325; 21 Ga., 80; 11 Ia., 399; 18 Fed. R., 253. *"Private room" is not included in the words "enclosure," "place" and "house:"* 3 Wheat., 336; 142 Mass., 573; 43 L. J. M. C., 107; 20 Ala., 51; 17 C. B. H. S., 33.

*Mr. B. A. Morgan,* contra, cites: *Term "house" in ordinance includes "private rooms:"* Dud., 347. *Statutory and not constitutional (art. I., sec.* 18,) *provisions apply in trials in municipal courts:* Crim. Code, 56; 33 S. C., 100; 24 S. C., 363, 158, 165; 32 S. E. R., 408; 24 S. C., 143; 4 McC., 68. *Is ordinance in conflict with the law?* 29 S. C., 368; 24 S. C., 363; 33 S. C., 56; 11 S. C., 290. *Single act violates the ordinance:* 1 Rich. L., 91; 3 Hill, 187.

Aug. 7, 1900. The opinion of the Court was delivered by
MR. CHIEF JUSTICE McIVER. The defendant was tried and convicted before the mayor's court for the city of Greenville for a violation of one of the ordinances of said city, and sentenced to pay a fine of $50, or be imprisoned for the term of thirty days. He paid the fine under protest, and gave notice of appeal to the Circuit Court, upon what grounds

does not appear in the "Case." That appeal was heard by his Honor, Judge Watts, who passed the following order dismissing the appeal: "The above stated case came up before me for hearing upon appeal from the mayor's court of the city of Greenville, upon exceptions stated, matter written and oral, the oral being as to matters jurisdictional. Upon hearing said case upon said appeal, and after the argument of appellant's counsel, it is ordered, that the exceptions or grounds of appeal be overruled, the appeal dismissed, and the judgment of the Court below confirmed." From this order the defendant has appealed to this Court upon the several grounds set out in the record, which will be incorporated by the reporter in his report of this case.

So far as these grounds raise any question of fact, they may be passed by. With the simple remark that this Court has no jurisdiction to review decisions of questions of fact in such a case as this.

We do not, therefore, propose to consider these grounds *seriatim,* but will confine our attention to the questions discussed in the argument of counsel for appellant. The first point made is thus stated in the argument for appellant: "The ordinance is unconstitutional and invalid, because it enlarges the offense of keeping a gaming house as already defined by the law of the State." The first remark we have to make in regard to this point is, that it seems to have been made under a misapprehension of the true nature of the case. It assumes that the offense with which appellant was charged, and of which he was convicted, was "keeping a gaming house," whereas, the "Case" shows that: "The charge upon which defendant was tried was permitting his place, house or room to be used as a place for gaming with cards for money or other stakes," in violation of one of the ordinances of the city, set out in the "Case"—the terms of which will, hereinafter, be more particularly referred to. And the mayor, in his return, which is set out in the "Case," states the offense charged in the same language. The mayor nowhere says what he is quoted by

counsel for appellant as saying, that the charge was "for keeping a gambling house." So that the first point made by appellant cannot, for this reason, be sustained. But as we understand from the argument that the real ground taken by appellant is that, inasmuch as the State has, by sec. 391 of the Criminal Statutes, undertaken to legislate upon the subject of gaming, and after making it a penal offense for any person to play, "at any tavern, inn, store for the retailing of spirituous liquors, or in any house used as a place for gaming, or in any barn, kitchen, stable or other outhouse, or in any street, highway, open wood, race-field or open place, at any game or games with cards or dice," &c., and making it the duty of any trial justice (now magistrate) to prosecute such offenders, also makes it his duty to prosecute "the keeper or keepers of taverns, inns, stores for the retailing of spirituous liquors, public places, or house used as a place of gaming, or other public house," and declaring "that every person so keeping such tavern, inn, retail store, public house or house used as a place for gaming, or such other public house," shall, upon conviction, be imprisoned, &c., showing that the offenses thus denounced must be committed in some *public* place, it is not competent for the municipal corporation of the city of Greenville to pass an ordinance going beyond this, and making it a penal offense for a person to permit his *private* room in the city of Greenville to be used as a place for gaming. In the first place, it may be questioned whether the statute referred to is confined to those who have done any of the acts therein forbidden in a *public* place. Certainly, the acts denounced as criminal offenses, in the succeeding sec. 392, are not confined to those done in some *public* place. But waiving this, we think that, even if the criminal statutes referred to can be so construed as to relate only to acts done in some *public* place, still there is no reason why this, alone, can be regarded as sufficient to prevent the municipal corporation of the city of Greenville from passing the ordinance under which appellant has been convicted. It is quite true, that a municipal corporation derives

all of its powers from its charter, and can exercise no power which is not therein granted, either expressly or by necessary implication. But by the act to charter the city of Greenville, acts of 1885, 19 Stat., at page 109, the city council of Greenville is expressly vested with full power and authority to pass all such ordinances, "as shall appear to them necessary and requisite for the security, welfare and convenience of said city, for preserving health, life and property therein, and securing the peace and good government of the same, and may fix and impose fines and penalties for the violation thereof: *Provided, nevertheless,* That * * * no fine shall exceed the sum of $50, or imprisonment except for a period longer than thirty days, or either or both, for the same offense." In pursuance of this authority, the city council passed the ordinance here in question, entitled "An ordinance to prevent the pernicious practice of and engaging in gaming for money within the city of Greenville, S. C.," one of the provisions of which is that: "It shall not be lawful for any person or persons to * * * permit his, her or their enclosure or place or house to be used as a place for gaming with cards * * * for money or other stake," and the punishment to be imposed for such offense is a fine not exceeding $50 or imprisonment for not more than thirty days. It was admitted at the trial that the room in which the offense was alleged to have been committed was occupied by the defendant, it being a furnished room in the building known as the Central Hotel, rented by the defendant. There was testimony tending to show that when the sergeant of police entered the room, he found the defendant sitting at the head of the table, on which there were three packs of cards, and a pack of poker chips near the defendant, and in a bureau drawer the sergeant found a quantity of poker chips. On the right of the defendant, two other persons were sitting—one of whom had money in his hands. There was also testimony that on a previous occasion persons were seen playing cards in that room for money, in the presence of the defendant. The contention on the part of the appellant is that this was a *private*

room occupied by defendant, and that, inasmuch as the law-
making power of the State had not seen fit to make it a crim-
inal offense for a person to permit his private room to be
used as a place for gaming with cards for money, the city
council had no authority to do so.   Granting, for the sake of
argument only, that the legislature has not seen fit to make
it a criminal offense for a person to permit his room, in a
building formerly used as a hotel, which he rents and occu-
pies, to be used as a place for gaming with cards, we see no
reason whatever why that should operate as a prohibition to
the city council from passing such an ordinance as that here
in question.   Common experience shows that city corpora-
tions find it necessary for the peace and good order of the
city to forbid the doing of many acts, under penalty, as to
which the legislature have not found it necessary to legislate.
The ordinance is certainly not in conflict with any act of the
legislature.   The State legislation upon the subject, even if
construed as contended for by appellant, and the municipal
legislation here in question, can both stand together, and
there is no conflict whatever.   The utmost that can be said is
that the municipal corporation, under the authority vested in
it by its charter, has seen fit to make an act done within the
corporate limits a criminal offense, which the legislature
has not seen fit to constitute such an offense.   Indeed, it is
well settled, in this State, at least, that the same act may be
made an offense both against the State and the municipal
law.   As that great jurist, Judge Cooley, expresses it, in his
work on Constitutional Limitations, at page 199, of 2d edi-
tion : "Indeed, the same act may constitute an offense both
against the State and municipal corporation, and both may
punish it without violation of any constitutional principle."
And in a note he says : "Such is the clear weight of authority,
though the decisions are not uniform," and proceeds to cite
the cases.   In one of the cases which he cites, *Rogers* v.
*Jones*, 1 Wend., 261, we find the following language, which
is so appropriate to the case in hand, that we quote it : "If the
legislature have passed a law.regulating as to certain things

28—58

in a city, I apprehend the corporation are not thereby restricted from making further regulations." To the authorities cited by this distinguished author we may add the case of *Cross* v. *North Carolina*, 132 U. S. Rep., 131—especially at page 139—decided since Judge Cooley wrote. This doctrine has been expressly recognized and approved in this State; see *State ex rel. Burton* v. *Williams*, 11 S. C., 288, and the cases therein cited, and has again been approved in the comparatively recent case of *City Council* v. *O'Donnell*, 29 S. C., at page 368-9. If this be so, then it is clear that even though the legislature may have passed a statute in reference to the offense against the vice of gaming, the municipal corporation of Greenville is not thereby restricted from making further regulations upon the same subject, which, of course, have no operation except within the corporate limits of Greenville. See, also, the cases of *Heisembrittle* v. *City Council*, 2 McM., 233, and *City Council* v. *Ahrens*, 4 Strob., 241. The case of *Heise* v. *Town Council*, 6 Rich., 404, cited by counsel for appellant, has no application to this case. There the case turned upon the fact that the town council had no power, under its charter, to impose a forfeiture as a penalty for a violation of its ordinances. Here, however, the city council of Greenville is expressly invested by its charter with the power to pass such ordinances as shall appear to them necessary for securing the peace and good government of the said city; and if we were at liberty to inquire into the propriety of the means which they saw fit to adopt to suppress the pernicious vice of gaming, we would be inclined to agree with them that, in order to effect the laudable purpose, a very efficient means would be that which they adopted. For if persons who rent furnished rooms, for lodging, in a city like Greenville, are permitted, with impunity, to use their rooms as places for gaming, the vice would flourish even if every public gaming house in the city were entirely suppressed. We are satisfied, therefore, that appellant's first position cannot be sustained.

The second point made by counsel for appellant is thus

stated in his argument: "Even if the ordinance is valid, the defendant is not guilty of the offense charged." This point, as developed by the argument, seems to rest, first, upon the theory that the charge made against defendant was "keeping a gambling house," which, as we have shown above, was not the charge made against the defendant, and, therefore, more need not be said as to that. The real ground, however, upon which this second point made by appellant seems to rest, is that the room which, it is alleged, the defendant permitted other persons to use as a place for gaming, was neither his "enclosure" nor "place" nor "house," and as the ordinance used those terms in describing the offense denounced, he could not legally be convicted. This is quite technical; but still defendant has a right to make the point, and it must be considered. But the question is whether the point is well taken. We do not think so, for two reasons: 1st. The room which defendant rented and occupied was certainly his "place" as long as he continued to occupy it. He could lawfully forbid any person who was objectionable to him from entering his room or "place" of abode. Even his landlord had no right to enter it without the consent of the tenant, except under circumstances not necessary to be stated here. It was his castle, as much so as the poor man's hut in the wilderness. But 2d. We have very high authority for saying that the room was his "house." See 2 Bish. on Crim. Law, sec. 107-8, and as was said by O'Neall, J., in *State* v. *McDowell,* Dud., at page 347, in speaking of bawdy houses: "Without concert between defendants occupying different rooms for purposes of prostitution in a lodging house, the offenses are just as distinct as when they occupy different houses. For in the case supposed, each room is a bawdy house, and its inmate the keeper." The second point cannot, therefore, be sustained.

The third and last point made is that the fine imposed "was excessive and unjust." It certainly was within the limits prescribed both by the charter and the ordinance, and,

therefore, there was no error of law in imposing a fine within those limits.    This being so, the amount of the fine was a matter exclusively within the discretion of the mayor, and in his return he gives a very good reason for going to the limit of the law in this instance, as he had found that the imposition of a smaller fine had proved to be inefficacious in suppressing the evil.

The judgment of this Court is, that the order or judgment of the Circuit Court be affirmed.