### No. 9367.

PROVIDENT LOAN SOCIETY *v.* CITY AND COUNTY OF DENVER.

1. PAWN BROKER—*Who Is—Statute Construed.* By c. 66 of the Laws of 1897 (Rev. Stat. sec. 4811) the state assumes to regulate the business of pawn broking, only where those conducting it exact as much as three per cent per month interest.

2. —— *Municipal Ordinance.* A municipal ordinance may require a license from those lending money at a rate of interest less than that set down in the statute (Rev. Stat. sec. 4811).

3. POLICE POWER—*Exercised by Municipal Corporation.* That the
state has, in the exercise of the police power, prescribed regu-
lations for those of particular callings, does not prohibit a mu-
nicipal corporation from prescribing additional regulations for
the same class, not in conflict with those of the state, and not
in themselves unreasonable or discriminatory.  Examples cited.

*Error to Denver County Court, Hon. Ira C. Rothgerber,*
*Judge.*

Messrs. SYMES & FARRAR, Mr. IVOR O. WINGREN, for
plaintiff in error.

Mr. JAMES A. MARSH, Mr. JACOB J. LIEBERMAN, for de-
fendant in error.

Opinion by Mr. Justice Allen.

THIS is an action wherein The Provident Loan Society,
a corporation, is charged with a violation of section 1390,
article I, chapter 35, of the Municipal Code of 1906, of
the City and County of Denver, which section reads as
follows:

"Sec. 1390. *License Required.* It shall be unlawful for
any person, firm or corporation to establish or conduct the
business of pawnbroker unless such person, firm or cor-
poration shall have first procured a license to conduct such
business, in manner and form as in this ordinance provided.
Every person or corporation engaged in the business of
receiving property in pledge, or as security for money or
other thing advanced to the pawner or pledger, shall be
held and is hereby declared and defined to be a pawn-
broker."

It is conceded that the Loan Society, above named, is and
was a pawnbroker as defined by the ordinance, and that,
as charged, it violated the ordinance by conducting the
business of a pawnbroker, without having first procured a
license from the city.

This action was instituted in the Municipal Court, where
the defendant Loan Society was tried and found guilty as
charged.  An appeal was taken to the County Court, where,
upon trial, a like result was reached, and a judgment was

rendered in favor of the plaintiff below, the City and County of Denver. The Loan Society, defendant below, brings the case here for review and asks that the writ of error herein be made a supersedeas. The various assignments of error are all made or based upon the theory that the ordinance in question is invalid.

It is contended by the Loan Society, the plaintiff in error, that the ordinance is in conflict with the statute on pawnbrokers (Chapter 66, p. 250, Session Laws 1897). This is the principal question presented for our determination.

The first section of the statute provides that

"* * * it shall be unlawful for any corporation, company or person to establish or conduct the business of pawnbroker within the State of Colorado, unless such corporation, company or person shall have first procured a license from the proper authorities of the town or city in which they are engaged in such business," and shall furnish a bond. (Sec. 4804, R. S. 1908; Sec. 5393 Mills Ann. Sts. 1912.)

The eighth section of the act provides, in substance, that no pawnbroker shall charge a greater rate of interest upon money advanced than that of 3% per month.

(Sec. 4811 R. S. 1908; Sec. 5400 Mills Ann. Sts. 1912.)

Section 16 of the pawnbroker statute provides that,

"Any person or persons loaning money on personal property and charging as much as the maximum rate of interest herein provided, shall be deemed a pawnbroker, and such person doing business without a license shall be guilty of a misdemeanor. * * *"

(Sec. 4819 R. S. 1908; Sec. 5408 Mills Ann. Sts. 1912.)

The plaintiff in error refers to numerous sections of the statute and of the ordinance, and contends that there is "a sharp conflict" between the provisions of the statute and those of the ordinance. The section of the ordinance under which the plaintiff in error was prosecuted, is complete within itself even when the other sections of the ordinance which relate to the rate of interest to be charged by a pawn-

broker, and to the time and manner of sale of a pledge, are deemed to be stricken out. The ordinance, therefore, even if invalid as to certain parts, may still be valid so far as its licensing provisions are concerned. *Vinsonhaler v. People,* 48 Colo. 79, 81, 108 Pac. 993. We need not, therefore, consider or examine any other part of the ordinance than the section under which this action was brought, namely, section 1390 of the Municipal Code, hereinbefore quoted.

The plaintiff in error claims that this section of the Municipal Code is in conflict with the statute because "the statute defines a pawnbroker as one making loans * * * who charges as much as 3% per month interest," while "the ordinance declares every one who engages in the business of receiving property in pledge or as security for money or other thing advanced * * * a pawnbroker, regardless of the rate of interest charged."

It is apparent from a comparison of the ordinance with the statute, that a person, firm, or corporation may be a "pawnbroker," within the definition given by the ordinance, and yet, because not "charging as much as the maximum rate of interest," not be a pawnbroker within the meaning of the statute. The plaintiff in error, according to the evidence, charges interest on its loans at a rate not exceeding 2% per month of the amount of money actually loaned or advanced. Since the Loan Society did not charge as much as the maximum rate of interest, or 3% per month, it was not a "pawnbroker" within the meaning of the statute, but was a pawnbroker as defined by the ordinance. The statute, however, did not prevent the Loan Society from being deemed, or being in fact, a pawnbroker.

When the statute designates who "shall be deemed to be a pawnbroker" it merely refers to the class of pawnbrokers who are affected by the statute, or to the class of persons who are to be dealt with by the statute as pawnbrokers. Other pawnbrokers are in no way affected by the statute. The definition given by the statute is not made a general

rule of law. It applies no further than to the statute itself. The result is that by this and other sections of the pawn-broker statute, the state exercises the power to regulate and control the business or avocation of pawnbroking, but only where such business is conducted by pawnbrokers charging as much as 3% per month interest. The state is not attempting to regulate or control the business of pawnbroking where such business is carried on by loaning money on personal property at a rate of interest less than 3% per month. It follows that if a municipality requires a license of pawnbrokers belonging to the class last de-scribed, and by ordinance attempts to, or does, regulate and control their business, it does nothing in conflict with the statute, because there is no statute governing that part of the pawnbroking business. Neither does the municipality interfere with the state's regulation and control of the business of pawnbroking. The ordinance is neither incon-sistent nor in conflict with the statute. The statute re-quires pawnbrokers who charge as much as 3% per month interest to be licensed; so does the ordinance, because it requires *all* pawnbrokers to be licensed. The ordinance does not exclude but does include those who are pawnbrok-ers under and governed by the statute.

If the statute had provided that no license should be imposed on pawnbrokers except those charging the maxi-mum of 3% per month interest, then there might have been a conflict between the statute and the ordinance, but no such provision appears in the statute, nor can it be im-plied from the language thereof.

It is well settled that the mere fact that the state, in the exercise of the police power, has made certain regulations does not, however, prohibit a municipality from exacting additional requirements. So long as there is no conflict between the two, and the requirements of the municipal by-law are not in themselves pernicious, as being unreason-able or discriminatory, both will stand. 19 R. C. L. 804, Sec. 110.

Thus, a municipal ordinance making it an offense to permit gaming in the place or house of any person is not invalid because the state had enacted a statute which prohibited such acts in public places. *Greenville v. Kemmis,* 58 S. C. 427, 36 S. E. 727, 50 L. R. A. 725. An ordinance declaring it unlawful for an automobile to be driven on public streets at a greater rate of speed than six miles per hour, was held not to be in conflict with a statute prohibiting the driving of automobiles "within the thickly settled or business portion of any city at a greater speed than twelve miles per hour." *Bellingham v. Cissna,* 44 Wash. 397, 87 Pac. 481. There is no difference upon principle between an ordinance enlarging a class of acts, and one enlarging a class of persons dealt with by a statute. The legislature while providing that pawnbrokers charging 3% interest per month must be licensed, did not enact any law with reference to the licensing of other pawnbrokers, nor any law prohibiting the licensing and regulation of such other pawnbrokers. Upon the principle followed in the authorities cited, there is clearly no conflict between the statute and the ordinance involved in the instant case. The ordinance is neither inconsistent with nor repugnant to the general law, and does not in the least tend to limit or to interfere with the operation of the statute.

The city has the power to legislate upon local and municipal matters. If, as contended by plaintiff in error, the business of pawnbroking is a matter of state-wide interest, this fact does not prevent such business from being also a matter of municipal interest. The preservation of the health, safety, welfare and comfort of dwellers in urban centers of population requires the enforcement of very different and usually much more stringent police regulations in such districts than are necessary in a state taken as a whole.

19 R. C. L. 798, Sec. 106. In Sec. 163, p. 861 of the volume just cited, it is said:

"The business of pawnbrokers, because of the facility it furnishes for the commission of crime and for its conceal-

ment, is one which belongs to a class where the strictest police regulation may be imposed."

And in Sec. 258 of the same work is the following:

"Among the occupations which have been held to affect the public interest so far that a municipal corporation may lawfully require a license as a condition of engaging therein are * * * keeping a * * * pawnbrokers shop."

In Sec. 1023 McQuillen Munic. Corp., it is said:

"The law recognizes that the business of a pawnbroker is of such a character as to justify and imperatively require rigid police supervision, and as a means to this end a permit or license to conduct such business may be demanded."

For the reasons hereinbefore stated, we hold that section 1390 of the Municipal Code of 1906, of the City and County of Denver, being the section of the ordinance involved in this case, is valid, and that no error was committed by the County Court in finding and determining that plaintiff in error was a pawnbroker under the ordinance and subject to the penalties provided for the violation of the section of the ordinance in question. The application for a supersedeas will therefore be denied, and the judgment affirmed.

*Affirmed.*

Mr. Chief Justice Hill and Mr. Justice Bailey concur.