## Richmond.

### COUNCIL OF TOWN OF FARMVILLE V. WALKER.

#### March 12, 1903.

1. CONSTITUTIONAL LAW—*Sale of Intoxicating Liquor—Dispensary—Municipal Corporations.*—The regulation of the sale of intoxicating liquor is within the police power of the State, and it may authorize a municipal corporation to establish a dispensary for the sale of such liquor, although in doing so it may render necessary the expenditure of money, and ultimately the imposition of a tax. The object is a public one, in the promotion of which public money may be expended. The Act of 1901, chapter 113, conferring such power on a municipal corporation, is not contrary to the Constitution in force when it was passed. It is not a tax law, but a police regulation.

Appeal from a decree of the Circuit Court of Prince Edward county, pronounced in a suit in chancery, wherein the appellee was the complainant, and the appellant was the defendant.

*Reversed.*

The opinion states the case.

*A. D. Watkins* and *W. H. Mann,* for the appellant.

*Caskie & Coleman,* for the appellee.

KEITH, P., delivered the opinion of the court.

The Legislature, at the extra session in 1901, passed an act entitled "An act to establish a dispensary for the sale of intoxicating liquors in Farmville Magisterial District, Prince Ed-

ward county, Virginia, to prohibit all persons, firms, corpora-. tions to sell, barter, or exchange such liquors in said district, and to repeal all laws in conflict with this act, so far as they apply to the said magisterial district."

The first section of the act makes the sale of intoxicating liquors of any kind in Farmville district, except as therein provided, a misdemeanor punishable by fine and imprisonment.

By the second section the town of Farmville is authorized to elect three of its citizens who shall constitute a dispensary board, and fixes their term of office and compensation; and the sections following authorize the purchase of spirituous, vinous and malt liquors in such quantities as the board shall order; require the treasurer of the town of Farmville to pay all bills for the establishment and maintenance of the dispensary and the purchase of stock; prescribe the terms upon which sales shall be made; empower the board from time to time to make rules and regulations for the operation of the dispensary; prohibit the sale of wines and liquors to any person known to be an habitual drunkard, to minors, or persons intoxicated, except upon the prescription of a regularly licensed physician; direct that the dispensary shall not be opened before sunrise, and that it shall be closed at sunset each day, and on Sundays, election days and such other days, and under the same circumstances, as make the sale of liquors unlawful under the laws of this State. It is provided that the room in which the business shall be conducted shall front upon one of the principal streets of the town, and shall have no other means of ingress or egress except the front door thereof. The price at which liquors, etc., shall be sold is to be fixed by the Dispensary Board, provided that the same shall not be sold for a profit exceeding eighty *per centum* above the actual cost thereof.

There are other provisions of the statue which need not be specifically mentioned.

The twelfth section enacts that: "The Council of the said

town shall appropriate from the treasury of the town a suffi-
cient amount to establish the dispensary as provided for in this
act, which amount shall be paid into the town treasury from
the profits arising from said dispensary as they shall accrue,
and no profit shall be paid out in any other direction until said
amount is so repaid, and thereafter said dispensary shall be
supported and maintained out of the profits accruing out of
said business; provided, however, that the said town Council
may allow said board to borrow money or buy goods on the
credit of the dispensary alone, if it be necessary to keep said dis-
pensary in operation."

By the sixteenth section it is provided: "The net profits ac-
cruing from said dispensary under this act shall be disposed of
in the following manner: One-fourth to the State of Virginia;
three-eighths to the town of Farmville for the purpose of build-
ing and maintaining its streets and alleys, and three-eighths to
the Farmville Magisterial District outside of said town for its
public roads. Such distribution shall be made when ordered by
said board, and at least once a year."

In May, 1901, C. M. Walker, a citizen of the town of Farm-
ville, exhibited his bill in the Circuit Court of Prince Edward
county, in which, after reciting in detail the various provisions
of the above act, he insists that it is void as being in many re-
spects repugnant to the Constitution of the State, and of the
United States.

In accordance with the prayer of the bill, an injunction was
awarded "enjoining the Council of the town of Farmville from
taking any steps whatever looking towards the enforcement of
the act known as the dispensary act for Farmville Magisterial
District," and at the September term, 1901, a final decree was
entered perpetuating that injunction, and that decree is now
before us for review.

The act in question is not a tax law. Its purpose is not to
raise revenue, but to regulate the sale of intoxicating liquors.

Its constitutionality, therefore, is to be determined by referring not to the taxing power of the Legislature, but to its police power. Its enforcement may or may not result in raising revenue. If the conduct of the dispensary should prove to be remunerative, it will bring revenue into the treasury of the county, the town, and the State; should it prove unprofitable, it would deplete the treasury of the town of Farmville.

The act does, however, authorize the expenditure of money by the Council of the town of Farmville, which was raised by taxation, and this can only be properly expended for some public use.

As was said by Justice Miller in *Savings & Loan Ass'n* v. *Topeka*, 20 Wall. 655, 22 L. Ed. 455: "It is undoubtedly the duty of the Legislature which imposes or authorizes municipalities to impose a tax, to see that it is not to be used for purposes of private interest instead of a public use, and the courts can only be justified in interposing when a violation of this principle is clear, and the reason for interference cogent. And in deciding whether, in the given case, the object for which the taxes are assessed falls upon the one side or the other of this line, they must be governed mainly by the course and usage of the government, the objects for which taxes have been customarily and by long course of legislation levied, what objects or purposes have been considered necessary to the support and for the proper use of the government, whether State or municipal. Whatever lawfully pertains to this and is sanctioned by time and the acquiescence of the people may well be held to belong to the public use, and proper for the maintenance of good government, though this may not be the only criterion of rightful taxation."

That the regulation of the sale of intoxicating liquors is within the police power of the State is established, if not literally, by all the cases where the subject has been considered, certainly by an overwhelming array of authority.

In *Tragesser* v. *Gray* (Supreme Court of Maryland), 9 L. R. A., at p. 780, 20 Atl. 905, 25 Am. St. Rep. 587, it is held that "The Legislature may prohibit or restrict the sale of spirit-uous liquors in any manner which its discretion may dictate. No one can claim as a right any power whatever to sell such liquors; if he sells at all, it must be on such terms as the Legis-lature sees fit to impose. . . . .

"The validity of an exercise by a State of its police power in regulating the sale of spirituous liquors does not in the least degree depend on any question as to the presence or absence of discrimination for or against particular persons or classes of persons. The Legislature may lawfully grant the right to sell to a certain class or classes of persons and withhold it from all others."

In the notes to that case, decisions from many States are collated which are to the same effect, among them *Bartemeyer* v. *Iowa*, 14 Wall. 129, 21 L. Ed. 929, which holds that "the usual and ordinary legislation of the States, regulating or pro-hibiting the sale of intoxicating liquors, raises no question under the Constitution of the United States.

"The right to sell intoxicating liquors is not one of the privi-leges and immunities of the citizens of the United States which, by the Fourteenth Amendment to the United States Constitu-tion, the States were forbidden to abridge."

In *Kidd* v. *Pearson*, 128 U. S. 1, 32 L. Ed. 346, it was held that "A State has the right to prohibit or restrict the manufac-ture of intoxicating liquors within its limits; to prohibit all sale and traffic in them in the State; to inflict penalties for their manufacture and sale, and to provide regulations for the abate-ment as a common nuisance of the property used for such for-bidden purposes.

"Whether a State, in the exercise of its undisputed power of local administration, can enact a statute prohibiting within its limits the manufacture of intoxicating liquors except for cer-tain purposes is no longer an open question before this court."

In *Mugler* v. *Kansas*, 123 U. S. 623, 31 L. Ed. 205, it was held: "Legislation by a State prohibiting the manufacture within her limits of intoxicating liquors, to be there sold or bartered for general use as a beverage, does not necessarily infringe any right, privilege, or immunity secured by the Constitution of the United States.

"It belongs to the legislative department to exert what are known as the police powers of the State, and to determine, primarily, what measures are appropriate or needful for the protection of the public morals, the public health, or the public safety—subject to the power of the court to adjudge whether any particular law is an invasion of rights secured by the Constitution.

"Government does not interfere with, nor impair, any one's constitutional rights of liberty or of property, when it determines that the manufacture and sale of intoxicating drinks, for general or individual use, as a beverage, are or may become hurtful to society, and constitute, therefore, a business in which no one may lawfully engage."

That case, indeed, seems to have reached the limit in maintaining the police power of the State when exercised for the safety, health or morals of the community; and a prohibition upon the use of property in the manufacture, sale or barter of intoxicating liquors, declared by the Legislature to be injurious to the health, morals and safety of the community, was not deemed a taking or appropriation for the public use, nor could the State be stayed from providing for "the discontinuance of any manufacture or traffic which is injurious to the public morals, by any incidental inconvenience which individuals or corporations may suffer."

Two cases growing out of the receivability of coupons for taxes, which at one period so gravely interested the people of this State, illustrate the limitation upon the Legislature, when

acting under the power to levy taxes in order to raise revenue, and practically the unlimited power of the Legislature in the exercise of its police power for the protection of the health, safety and morals of the community.

In *Royal* v. *State of Virginia*, 116 U. S. 572 29 L. Ed. 735, the constitutionality of an act which required lawyers to pay the license taxes assessed upon them in money and not in coupons was held to be void, because in violation of the contract of the State to receive coupons in payment of all "taxes, debts, dues and demands due the State."

In *Huckless* v. *Childrey*, 135 U. S. 662, 34 L. Ed. 304, the Virginia statute which required a license for the sale of intoxicating liquors to be paid in money and not in coupons was held to be constitutional.

In *Royal* v. *Virginia*, the license was imposed not for the purpose of regulating the privilege or occupation of practicing law, but in order to raise revenue; in *Huckless* v. *Childrey*, the object was held to be the regulation of the sale of intoxicating liquors, and the requirement that the license imposed should be paid in money and not in coupons was maintained upon the ground that the object in view was the regulation of the traffic in liquor, and came within the police power of the State.

In concluding the opinion in *Huckless* v. *Childrey, supra,* it is said: "It is conceded that the State might, in her discretion, absolutely abolish the sale of spirituous liquors, or prescribe on what terms they shall be sold. In this view, there does not seem to be any violation of the obligation of the State in requiring the tax which is imposed to be paid in any manner whatever—in gold, in silver, in bank notes, or in diamonds. The manner of payment is part of the condition of the license intended as a regulation of the traffic. It would be very different if the business sought to be followed was one of the ordinary pursuits of life, in which all persons are entitled to engage. License taxes imposed upon such pursuits and profes-

sions are imposed purely for the purpose of revenue, and not for the purpose of regulating the traffic or the pursuit."

Enough has been said to show that, in dealing with the sale of intoxicating liquors, the Legislature is fulfilling a public duty; that it is striving to promote the health, safety and morals of the community, and that in the exercise not of its taxing, but of its police power. If the power exists in the Legislature, it is not for us to question the manner of its exercise.

It is true that it is not always necessary, in order to declare an act unconstitutional, to point out the precise provision which it violates if it be repugnant to the spirit of the Constitution, or of the institutions which the Constitution creates.

As was said by Justice Miller in *Savings & Loan Ass'n* v. *Topeka, supra*: "The theory of our governments, State and national, is opposed to the deposit of unlimited power anywhere. The executive, the legislative and the judicial branches of these governments are all of limited and defined powers.

"There are limitations on such power which grow out of the essential nature of all free governments. Implied reservations of individual rights, without which the social compact could not exist, and which are respected by all governments entitled to the name. No court, for instance, would hesitate to declare void a statute which enacted that A and B, who were husband and wife to each other, should be so no longer, but that A should thereafter be the husband of C, and B the wife of D. Or which should enact that the homestead now owned by A should be no longer his, but should henceforth be the property of B."

The illustrations here given are extreme, and it is wholly improbable that such cases will arise. It is indeed possible that we might be driven to invoke the maxim that the safety of the republic is the supreme law in order to protect society from the exercise of governmental power not directly within the

limitations of the Constitution, but such a contingency is remote and improbable. As a rule of action the power and duty of the courts is sufficiently defined in the case of *Prison Ass'n v. Ashby,* 93 Va. 670 25 S. E. 893, where it is said: "The courts have nothing to do with the question whether or not the legislation contained in its provisions is wise and proper. The only question they have to deal with is one of power. The Legislature of the State has plenary power except where it is restricted by the Constitution of the State, or of the United States.

"If the statute, the validity of which is attacked, is not in conflict with the State or Federal Constitution, the courts have no power to declare it invalid, however well satisfied they may be that it is unwise or vicious legislation."

The cases which we have reviewed show the practically unlimited control which the Legislature may exercise with respect to the sale of intoxicating liquor. The usual mode in which the Legislature has hitherto sought to regulate it has been by the imposition of a license tax which, while operating in some degree to control the traffic, has had the incidental effect of bringing money into the treasury. The Legislature, however, being in the exercise of a public duty when dealing with the subject may, in its choice of means, deem it wise to expend money upon its control or suppression rather than to make it a source of revenue.

The dispensary law is a recent innovation. It may yet be considered as in its experimental stage. It may result in profit or loss according as it is discreetly or unwisely enforced. But with that the court has nothing to do. The end being legitimate, the Legislature is left to choose the means.

The act under consideration does not require the town of Farmville to expend its money, or to contract a debt. It permits it to make an experiment in regulating the sale of intoxicating liquors which may result in a profit or loss, in the increase

of the revenue, or in the imposition of a tax. Should the latter alternative become necessary, whatever tax is imposed must be in accordance with the Constitution and laws; but a discussion of those details may with propriety be waived until the necessity for their consideration shall arise. For the present, we deem it sufficient to say that the Council of the town of Farmville is here as an appellant asking this court to reverse the decree by which it was enjoined from enforcing the law. Whether the Legislature can require a municipality against its will to incur a debt, or to expend money already in its treasury is a question not presented to us upon this record. The town of Farmville seeks to be permitted to establish a dispensary, in the hope that it may thereby so regulate the sale and use of ardent spirits in that community as to promote the health, safety and morals of its people.

Similar laws have been enacted in other States and passed upon by the courts. In *State* v. *City of Aiken* (Supreme Court of S. C.), 20 S. E. 221, 26 L. R. A. 345, it was claimed that the act violated the Constitution of South Carolina in numerous respects, most of which are of merely local interest, but the court held, among other things, "that the act was not unconstitutional because it empowers the State to engage in traffic in liquors, as such traffic by the State is a mere incident of the regulation of the sale, and not the object of it."

In *Plumb* v. *Christy* (Supreme Court of Georgia), 30 S. E. 759, 42 L. R. A. 181, it was held that "The General Assembly of this State, by virtue of its police powers, has the authority to regulate and control the sale of all intoxicating liquors, and can establish dispensaries for an exclusive sale of such liquors, under the management of agents or officials created for this purpose."

We conclude, therefore, that it is within the province of the Legislature to pass laws for the promotion of the safety, health and morals of the people; that the regulation and control of

the traffic in ardent spirits is within the discretion of the Legislature under the police power of the State; that it constitutes a public object, use or purpose in the promotion of which public money may be lawfully expended, and that while it is unnecessary to decide whether or not it may require, it is plain that the Legislature may permit the town of Farmville to establish a dispensary, though in doing so it may render necessary the expenditure of money and ultimately the imposition of a tax; and, finally, that the act in question is not repugnant to the letter or the spirit of the Constitution in force when it was passed.

We are of opinion that the act establishing a dispensary in the town of Farmville is constitutional, and that the decree of the Circuit Court must be reversed.

*Reversed.*