# 𝖂𝖞𝖙𝖍𝖊𝖛𝖎𝖑𝖑𝖊.

## CITY OF DANVILLE v. HATCHER.

### June 11, 1903.

### Absent, Cardwell, J.

| | |
|---|---|
| 101 | 523 |
| f101 | 475 |
| 101 | 523 |
| e106 | 192 |
| 101 | 523 |
| 107 | 838 |
| 101 | 523 |
| f108 | 906 |
| 101 | 523 |
| f110 | 888 |

1. INTOXICATING LIQUORS—*Regulating Traffic—Police Power—Supervision of Courts.*—The regulation of the sale of intoxicating liquors is completely within the police power of the State, and may be exercised in such manner as the Legislature deems proper. It may be entirely prohibited, or such restraints may be placed upon it as the Legislature thinks wise, without supervision or control by the courts. The traffic is not one of the privileges or immunities of citizenship guaranteed by the Constitution of the United States, or the fourteenth amendment thereof.

2. MUNICIPAL CORPORATION—*Police Power—Supervision of Courts.*—In the absence of constitutional restrictions, the Legislature may confer its police power upon municipal corporations in such measure as it deems expedient, and, when fully conferred, the courts can no more interfere with the manner of its exercise than they could with the State which confers it.

3. CITY OF DANVILLE—*Regulation of Liquor Traffic—Reasonable Ordinances.*—The grant by the Legislature to the Council of the city of Danville o˜ the right to grant or refuse licenses to all sellers of wine, or spirituous, or fermented liquors, under such regulations as it may prescribe, confers upon the Council absolute control of the subject, and power to wholly suppress the privilege, or to grant it under such restrictions as it may deem proper. Whether the regulations are reasonable or not is not the subject of judicial investigation or enquiry. The subject rests wholly in the discretion of the Council.

4. MUNICIPAL CORPORATIONS—*Reasonable Ordinances—Supervision of Courts.*—An ordinance of a municipal corporation cannot be held to be unreasonable which is expressly authorized by a valid act of

the Legislature.  The right to declare ordinances unreasonable is restricted to ordinances passed under the incidental powers of the corporation, or under a grant of power general in its nature.  The only limitation on a grant of absolute and unlimited power over a subject, and the method of its exercise, is that it must be exercised in good faith.

5. CITY OF DANVILLE—*Liquor Licenses—Power of City Council—Corporation Court.*—Under the provisions of the charter of the city of Danville the power to adopt the policy of granting or refusing licenses to sell intoxicating liquors within the city limits is vested in the City Council, but the power to grant or refuse licenses to individual applicants is vested in the Corporation Court of the city.  The two provisions are not in conflict.

6. CITY OF DANVILLE—*Charter Provisions as to Liquor Licenses—Taxation—Police Regulations.*—Notwithstanding the fact that the power conferred on the Council of the city of Danville to grant or refuse liquor licenses occurs in a chapter of the charter entitled, "Taxes, taxation, &c.," and is found in a section which confers power on the city "to grant or refuse license" to insurance companies and other lawful businesses, still the provisions relating to the sale of intoxicating liquors are *police regulations*, and are not for the sole purpose of raising revenue.

7. STATUTES—*Construction—Valid in Part and Void in Part.*—A statute may be valid in one part and void in another, but if the two parts are not interdependent, and are easily severed, the courts will give effect to that which is valid.

Appeal from a decree of the Corporation Court of the city of Danville, pronounced April 30, 1902, in a suit in chancery, wherein the appellee was the complainant, and the appellant was the defendant.

                                                      *Reversed.*

The opinion states the case..

*Peatross & Harris*, for the appellant.

*Green, Withers & Green*, for the appellee.

WHITTLE, J., delivered the opinion of the court.

This appeal involves the validity of certain ordinances adopt-

ed by the city of Danville for the regulation of the retail whiskey traffic of that city.

The case made by appellee in his bill is that he had been a retail liquor dealer in the city of Danville, and is the owner of considerable property, valuable only in that business, consisting of a stock of liquors and wines, and certain fixtures, mirrors, bar counters, and other usual appurtenances of a retail liquor store; and also of a lease on a building for an indefinite period, in which his bar fixtures have been erected for the conduct of his business. That it had been his intention to apply for a license for the fiscal year commencing May 1, 1902, but that he is deterred from doing so by a threat on the part of the city authorities to enforce against him certain illegal and unreasonable ordinances, which, if carried out, would destroy his business, and render valueless his property.

The substance of the ordinances assailed is: (1) That every bar-room, saloon, store, or other place licensed, used, or kept for the sale of wine, ardent spirits, malt liquors, or other intoxicating drinks in the city shall be closed at 10 o'clock P. M., and remain closed until 5 o'clock A. M. the following day; and the ordinance prohibits the sale or disposition of those articles between the hours named.

After the institution of this suit the City Council amended the ordinance by substituting for the hours indicated 7 o'clock P. M. and 6 o'clock A. M. The ordinance, as amended, is made the subject of complaint by supplemental bill.

(2) That barkeepers and all persons who are licensed to sell wine, etc., in the city shall, during the time they are required by law to keep their places of business closed, remove all screens and obstructions to view from the aisles, passageways, etc., within their respective places of business, and shall be required to keep the same lighted. The ordinance likewise provides that no person, including the owners or keepers of such bar-rooms, etc., shall go into or frequent them during the time they are re-

quired to be closed, except that they may, on Sunday morning or other days in which they are required to be closed, enter the same to extinguish the light, and on the evening of such days enter to relight the same.

(3) The license tax is fixed at $500, and the licensees are required to remove all screens, doors, shaded windows, curtains, and obstructions to a full view of their places of business day and night; also that all bars shall be placed at a distance not further than 12 feet from the door. It is provided that violations of these several ordinances shall be punished by fine.

The bill further charges that the ordinances are unreasonable and oppressive, and were passed by the Council without authority, for the purpose of harrassing complaint, and forcing him to unreasonable expenditures of money, and depriving him of the lawful exercise of his personal rights; and its prayer is that they be declared null and void, and that the city be enjoined from their enforcement.

The city, by its answer, maintains that it has full and complete power under its charter to enact the ordinances complained of, and to refuse licenses to sell liquor altogether. It likewise denies that the ordinances were passed for the purpose and with the improper motive ascribed to it.

The trial court granted the injunction prayed for, and at the hearing perpetuated the same, except as to the ordinances requiring bar-rooms, etc., to be closed from 10 o'clock P. M. until 5 o'clock A. M., and imposing a license of $500.

From that decree the city appealed.

In order to arrive at a proper solution of the question involved in this controversy it is needful to inquire:

(1) As to the power of the State with respect to intoxicating liquors; and (2) to what extent it has conferred that power on the Council of the city of Danville.

The latest deliverance by this court in relation to the first branch of the inquiry will be found in the case of *Council of the Town of Farmville* v. *Walker, ante* p., 323, 43 S. E. 558.

It is there said: "That the regulation of the sale of intoxicating liquors is within the police power of the State is established, if not literally, by all the cases where the subject has been considered, certainly by an overwhelming array of authority."

It has been repeatedly decided that the subject is wholly within the police power of the Legislature, and that the traffic is not one of the privileges or immunities of citizenship guaranteed and protected by the United States Constitution or the fourteenth amendment thereto.

It may be entirely prohibited; and its regulation, when permitted, is absolutely within the discretion of the several States. These principles are sustained by the Supreme Court of the United States in a long line of decisions, rendered both before and after the adoption of the fourteenth amendment. *Bartemeyer* v. *Iowa,* 85 U. S. 129, 21 L. Ed. 929; *Boston Beer Co.* v. *Massachusetts,* 97 U. S. 25, 24 L. Ed. 989; *Mugler* v. *Kansas,* 123 U. S. 623, 8 Sup. Ct. 273, 31 L. Ed. 205; *Kidd* v. *Pearson,* 128 U. S. 1, 9 Sup. Ct. 6, 32 L. Ed. 346; *Huckless* v. *Childrey,* 135 U. S. 662, 10 Sup. Ct. 972, 34 L. Ed. 304; *Crowley* v. *Christensen,* 137 U. S. 86, 11 Sup. Ct. 13, 34 L. Ed. 620; *Giozza* v. *Tiernan,* 148 U. S. 657, 13 Sup. Ct. 721, 37 L. Ed. 599.

In *Kidd* v. *Pearson, supra,* it was held that a State has the right to prohibit or restrict the manufacture of intoxicating liquors within its limits, to prohibit all sale and traffic in them in the State, to inflict penalties for their manufacture and sale, and to provide regulations for the abatement as a common nuisance of the property used for such forbidden purposes.

It is further declared that the right of a State to exercise the foregoing powers is no longer an open question before that court.

The distinction between the power of a State to levy taxes

for revenue, and, in the exercise of its police power, to exact a
license tax for the privilege of carrying on the business of a
retail liquor dealer, is strikingly illustrated by the cases of
*Royall* v. *State of Virginia*, 116 U. S. 572, 6 Sup. Ct. 510, 29
L. Ed. 735, and *Huckless* v. *Childrey*, 135 U. S. 662, 10 Sup. Ct.
972, 34 L. Ed. 304.

In the former case a Virginia statute requiring lawyers to
pay a license tax for the privilege of practicing law, in money
and not in coupons, was declared to be a violation of the con-
tract of the State to receive coupons in payment of all "taxes,
debts, dues and demands due the State," and therefore void;
while in the latter the validity of a statute which required a
license for the sale of intoxicating liquors to be paid in money,
and not in coupons, was sustained.

In the case of *Huckless* v. *Childrey*, the court said: "It is
conceded that the State might, in her discretion, absolutely
abolish the sale of spirituous liquors, or prescribe on what terms
they shall be sold. In this view, there does not seem to be any
violation of the obligation of the State in requiring the tax
which is imposed to be paid in any manner whatever—in gold,
in silver, in bank notes, or in diamonds.

"The manner of payment is part of the condition of the
license intended as a regulation of the traffic. It would be very
different if the business sought to be followed was one of the
ordinary pursuits of life, in which all persons are entitled to
engage.

"License taxes imposed upon such pursuits and professions
are imposed purely for the purpose of revenue, and not for the
purpose of regulating the traffic or the pursuit."

There are also numerous decisions of courts of last resort of
the States which uphold the authority of the several States in
the exercise of their police power to absolutely control the
liquor traffic.

Judge Cooley, in discussing the legislative power over the

subject, uses the following language: "Perhaps there is no instance in which the power of the Legislature to make such regulations as may destroy the value of property without compensation to the owner appears in a most striking light than in the case of those statutes. The trade in alcoholic drinks being lawful, and the capital employed in it being fully protected by law, the Legislature then steps in, and by an enactment based on general reasons of public utility annihilates the traffic, destroys altogether the employment, and reduces to a nominal value the property on hand. Even the keeping of that for the purposes of sale becomes a criminal offence; and without any change whatever in his conduct or employment the merchant of yesterday becomes the criminal of to-day, and the very building in which he lives and conducts the business, which that moment was lawful, becomes the subject of legal proceedings, if the statutes shall so declare, and liable to be proceeded against for a forfeiture. A statute which can do this must be justified upon the highest reasons of public benefit; but, whether satisfactory or not, the reasons address themselves exclusively to the legislative wisdom." Cooley, Const. Lim. 120.

"The courts have nothing to do with the question whether or not the legislation contained in its provisions is wise and proper. The only question they have to deal with is one of power. The Legislature of the State has plenary power, except where it is restricted by the Constitution of the State or of the United States. If the statute, the validity of which is attacked, is not in conflict with the State or Federal Constitution, the courts have no power to declare it invalid, however well satisfied they may be that it is unwise or vicious legislation." *Prison Ass'n* v. *Ashby*, 93 Va. 670, 25 S. E. 894.

A further illustration of the absolute power of the Legislature over the sale of intoxicating liquors is furnished by the decision of this court in the case of the *Council of the Town of Farmville* v. *Walker*, *ante* p. 323, in which "an act to establish a

VOL. CI—67

dispensary for the sale of intoxicating liquors in Farmville Magisterial District, Prince Edward county, Virginia; to prohibit all persons, firms, or corporations to sell, barter, or exchange such liquors in said district, and to repeal all laws in conflict with this act, so far as they apply to the said magisterial district," was declared to be constitutional.

It is unnecessary to multiply authorities in support of the first proposition. It is abundantly sustained by the great weight of authority, State and Federal.

It remains, in the second place, to consider to what extent the Legislature has conferred on the City Council of Danville power to deal with the subject of selling by retail intoxicating liquors within the territorial limits of the city.

Quoting from the opinion of the trial court, the accuracy of which an inspection of the city charter verifies, it appears that "the powers to be deduced from these several citations can be condensed into what may be found in sections 2 and 4 of Chapter 7, which give to the Council the right to 'grant or refuse licenses to all sellers of wine or spirituous or fermented liquors' 'under such regulations as it may prescribe.' "

In the absence of constitutional restrictions, it is competent for the Legislature to confer its police power upon municipal corporations in such measure as it deems expedient. It cannot, of course, bestow greater power than the State itself possesses; and it must keep within the limitations, if any, imposed by the organic law. Subject to these restraints, it is within the province of the Legislature to invest such corporations with the police power of the State in whole or in part.

The language in which the grant of power is couched in this case is unmistakable, and too plain to admit of elucidation. It leaves it absolutely within the control of the Council to determine whether they will wholly suppress or grant the privilege, subject to such restrictions as they may see fit to impose.

Within the sphere of their delegated powers, municipal cor-

porations have as absolute control as the General Assembly would have if it had never delegated such powers and exercised them by its own enactments, and the courts can no more interfere with the acts of the one than the other. To permit such interference would be to deny the existence of a discretionary power, and transfer its exercise from one co-ordinate branch of the government to another. *Taylor* v. *Carondelet*, 22 Mo. 110; *Heland* v. *Lowell*, 3 Allen, 408, 81 Am. Dec. 670; *Des Moines Gas Co.* v. *City of Des Moines*, 44 Iowa, 505, 24 Am. Rep. 756; *Mason* v. *City of Shawneetown*, 77 Ill. 533; *State* v. *Clarke*, 54 Mo. 17, 36, 14 Am. Rep. 471.

In *Schwuchow* v. *City of Chicago*, 68 Ill. 444, it was held that, where the Legislature confers the power to suppress groceries where liquor is sold, or to regulate, license, and restrain the same, it is a matter purely discretionary whether or not the city will wholly prohibit its sale or license and regulate the traffic. The grant of such powers carries with it authority to allow the privilege on such terms and conditions as the Council may see fit to impose.

Where absolute control over the whole subject of granting licenses is conferred, the city may impose any other conditions calculated to protect the community, preserve order, and suppress vice, such as the closing of the grocery on election days, holidays, and Sundays, or at a particular hour each evening, etc. Such powers grow out of the fact that it is discretionary to prohibit the sale, or license it on such terms as the city may choose. In that case it is said: "Restrictions upon the traffic in spirituous liquors are not like such as restrict the ordinary avocations of life which advance human happiness, or trade and commerce, that neither produces immorality, suffering, nor want. This business is, on principle, within the police powers of the State, and restrictions which may rightfully be imposed on it might be obnoxious as an illegal restraint of trade when applied to other pursuits. The control of the liquor traffic

being a police regulation, no one can acquire such a vested right
in it by a license as that it may not be resumed when the in-
terests of society require it."

Beach, in his work on Public Corporations, at section 512g,
quotes with approbation what was said by Niblack, J., in an
able opinion delivered in a recent Indiana case:

"An ordinance cannot be held to be unreasonable which is
expressly authorized by the Legislature. The power of a court
to declare an ordinance unreasonable, and therefore void, is
practically restricted to cases in which the Legislature has
enacted nothing on the subject-matter of the ordinance, and
consequently to cases in which the ordinance was passed under
the supposed incidental power of the corporation merely." *Coal-
Float* v. *Jeffersonville*, 112 Ind. 19, 13 N. E. 117. The author,
in the same section, proceeds as follows: "So, where the Legis-
lature expressly authorized the municipality to pass any cer-
tain ordinance, that ordinance will be upheld, regardless of the
opinion of the court as to its reasonableness or unreasonable-
ness. This principle was fully discussed in a celebrated and
extreme case in Missouri. The charter of the city of St. Louis
authorized the city to regulate bawdy houses. The court con-
strued this provision to allow the passage of an ordinance licens-
ing bawdy houses, and in discussing the reasonableness of such
an ordinance it was said: 'It is naked assumption to say that
any matter allowed by the Legislature is against public policy.
The best indications of public policy are to be found in the
enactments of the Legislature. To say that such a law is of
unusual tendency is disrespectful to the Legislature, who no
doubt designed to promote the morals and health of the citi-
zens. Whether the ordinance in question is calculated to pro-
mote the object is a question with which the courts have no con-
cern.'" *State* v. *Clarke, supra.*

Dillon distinguishes ordinances which are, from those which
are not, amenable to attack in the courts for unreasonableness,
as follows:

*"Where the Legislature in terms confers upon a municipal corporation the power to pass ordinances of a specific and defined character,* if the power thus delegated be not in conflict with the Constitution, an ordinance thus passed pursuant thereto cannot be impeached as invalid because it would have been regarded as unreasonable if it had been passed under the incidental power of the corporation, or under a grant of power general in its nature. In other words, what the Legislature distinctly says may be done cannot be set aside by the courts because they may deem it to be unreasonable, or against sound policy. But where power to legislate on a certain subject is conferred, and the mode of its exercise is not prescribed, then the ordinance passed in pursuance thereof must be a reasonable exercise of the power, or it will be pronounced invalid." 1 Dillon on Mun. Cor., sec. 328.

It is insisted on behalf of appellee that the provisions in the charter of the city of Danville, under consideration, fall within the doctrine laid down in the foregoing section with respect to general grants of power.

If the premise were correct, the authorities relied on (which have been carefully considered, but which it is not deemed necessary to specifically review) would sustain the decree appealed from.

But it is clear that such is not the case. The general grant of power adverted to is placed precisely on the same footing with the implied or incidental powers of a municipality. The legal intendment of such grant is that the authority conferred by it shall be employed reasonably. If exercised unreasonably, it is an abuse of the confidence reposed, and is in contravention of the implied limitation on the powers conferred, and may be controlled by the courts.

But these principles have no application where the Legislature, as in the present case, has invested the City Council with all its police power over the subject. Under such conditions no

case has been found which warrants an interference by the courts with the discretion of the Council, exercised in good faith, for the general welfare of the inhabitants of the city.

As remarked, courts interfere with municipal legislation on the theory that the Council have exceeded or abused their authority; but that cannot be predicated of the acts of the Council in this instance under a grant which devolves upon them as wide discretion over licensing and controlling the sale of intoxicants within the territorial limits of the city of Danville as is possessed by the Legislature itself.

It would seem paradoxical to hold that the ordinances of a City Council, passed in good faith, attaching conditions in future to the business of selling intoxicating liquors can be assailed for unreasonableness under a charter which empowers the Council to *wholly prohibit* the business, or to license it under such regulations as they may prescribe. The only limitation on such a grant of power is that it must be exercised in *good faith.*

In the ultimate analysis it is a question of *power,* and the language of the charter in question plainly indicates a purpose to invest the City Council with absolute control over the sale of liquor within their territorial jurisdiction.

When a City Council "is vested with full power over a subject, and the mode of the exercise of such power is not limited by the charter, it may exercise it in any manner most convenient." *Beers* v. *Dalles City,* 16 Or. 334, 18 Pac. 835.

"Courts of equity cannot interfere by injunction with the exercise in good faith by municipal corporations of discretionary powers confered upon them by law." *Town of Harrisonburg* v. *Roller,* 97 Va. 582, 34 S. E. 523; *R., F. & P. R. Co.* v. *Richmond,* 26 Gratt. 83; Id., 96 U. S. 528, 24 L. Ed. 734; *Norfolk* v. *Norfolk Landmark,* 95 Va. 564, 28 S. E. 959; *Woodall* v. *City of Lynchburg,* 100 Va. 318, 40 S. E. 915.

"Courts cannot run a race of opinions upon points of right, reason, and expediency with the law-making power."

There is no conflict between the provisions of the charter under review and those which invest the Corporation Court with jurisdiction to grant licenses to liquor dealers.

The Council has no power to grant license to individual applicants. That is the province of the court.

Nor has the court power to adopt the policy of granting or refusing license to sell intoxicating liquors within the city limits. That is the province of the Council.

If the policy of sanctioning the business be adopted, or, rather, if it be not prohibited, by the Council, then the individual applicant must obtain license from the court in the manner and upon the terms prescribed by law.

Again, it is contended that the charter powers referred to occur in a chapter entitled "Taxes, Taxation," etc., and is found in a section which confers power on the city "to grant or refuse license" to insurance companies and other lawful businesses.

That the collocation of these enactments is incongruous must be allowed. Nevertheless, the fact remains that the provisions in respect to the sale of intoxicating liquors are *police regulations*, and are not for the sole purpose of raising revenue. They are embraced in a distinct and complete paragraph, are separable, and can be disposed of without disturbing the section so far as it applies to or affects other subjects.

If, therefore, the provision in respect to insurance companies and other businesses is void (as to which no opinion is expressed), the questions involved in this appeal arise out of an independent and disconnected subject-matter, the enactment in regard to which is valid, and, under the authorities, may be sustained. *Trimble* v. *Commonwealth*, 96 Va. 818, 32 S. E. 786; *Robertson* v. *Preston*, 97 Va. 296, 33 S. E. 618.

Upon the whole case the court is of opinion that the ordinances the validity of which is drawn in question are within the charter powers of the City Council, that they were enacted in good faith, and are valid and binding.

For these reasons the decree appealed from must be reversed, and the court will enter such decree as the lower court ought to have entered, dissolving the injunction, and dismissing the bill, with costs.

*Reversed.*