# Wytheville

## COMMONWEALTH OF VIRGINIA, EX REL. v. ANHEUSER-BUSCH, INC., ET AL.

June 14, 1943.

Record No. 2670.

Present, All the Justices.

The opinion states the case.

*G. Stanley Clarke, Assistant Attorney General,* for the appellant.

*Hunton, Williams, Anderson, Gay & Moore,* for the appellees.

HOLT, J., delivered the opinion of the court.

Under review is the authority of the Alcoholic Beverage Control Board over the advertisement of intoxicants. The use of alcohol in its many forms has perplexed society and its government from time immemorial and still does. It confronts them with an inescapable problem and apparently with an insolvable one. Some are cursed by it and some are comforted. Unhappy results have followed intemperate indulgence—certainly from the time of Noah—while discreet indulgence has added zest and wit to social gatherings long before the marriage feast at Cana.

After the Civil War little control was undertaken. Abuses were flagrant, the effect of which was to place our government under the complete control of those who wished to prohibit its use as a beverage, although, as a concession to the taste of others, an allowance of a quart a month was once made. Later came the Noble Experiment, which was a disappointment to many of its friends. Prohibition lost control, and one is now permitted to purchase two quarts a

month, provided he is registered and presents his own coupon. This strange diagonal did not please everybody. You cannot placate the implacable.

The advertisement before us is not in itself objectionable and is no more provocative than that spread abroad throughout the Commonwealth by the medium of the press. This apparent inconsistency is due to the difficulty of regulating the contents of out-of-State publications.

It was the difficulty of dealing with the details of this highly explosive subject which led the Legislature to embark upon an experiment of its own and to establish the Virginia Alcoholic Control Board. Acts of Assembly, 1934, p. 100. The power of the Legislature to appoint such boards and commissions is no longer debatable.

"The range of control conferred by Congress and the State legislatures upon subsidiary lawmaking bodies, variously denominated as heads of departments, commissions, and boards, penetrates in the United States, as in Great Britain and the Dominions, the whole gamut of human affairs. Hardly a measure passes Congress the effective execution of which is not conditioned upon rules and regulations emanating from the enforcing authorities. These administrative complements are euphemistically called 'filling in the details' of a policy set forth in statutes. But the 'details' are of the essence; they give meaning and content to vague contours. * * * They were the beginning of what is often called a 'fourth branch of government.' Since the war of 1914-18, and particularly since 1933, there has been an enormous and pervading increase in the number and scope of such administrative authorities." 42 Am. Jur. (Public Administration Law) section 4.

Of course the delegation to them of some legislative power is necessary. They have none within themselves.

Section 68 of the ABC Act repealed Code, sections 4581-4675, which prohibited all advertisements of ardent spirits.

The title to the Act of 1934, in part, reads:

"An Act to legalize, regulate and control the manufacture, bottling, sale, distribution, transportation, handling, adver-

tising, possession, dispensing, drinking and use of alcohol, brandy, rum, whisky, gin, wine, beer * * * " etc.

Section 5, as amended, Acts of Assembly, 1936, p. 419, reads:

"Power to Make Regulations; How Published; Effect Thereof—(a)  The board may from time to time make such reasonable regulations, not inconsistent with this act, nor the general laws of the State, as the board shall deem necessary to carry out the purposes and provisions of this act and to prevent the illegal manufacture, bottling, sale, distribution and transportation of alcoholic beverages, or any one or more of such illegal acts, and from time to time alter, repeal, or amend such regulations or any of them.  Such regulations shall be published at least once in some newspaper published in the City of Richmond and in any other manner which the board may deem advisable, and upon being so published shall have the force and effect of law.  The board shall certify to the clerks of all circuit courts and city courts of record having criminal jurisdiction copies of all regulations adopted by the board; such clerks shall keep on file for public inspection all such regulations certified to them by the board."

These conditions have been met, and we are to determine if those limitations imposed by the board upon advertisements are reasonable.  Those things are reasonable which are supported by good reasons.  Under the board's regulations only licensed dealers may advertise.  The limitations put upon them appear to be satisfactory; so far as we know, they have not been questioned by them.

Anheuser-Busch, Incorporated, in its answer said:

"2.  This respondent admits that it is a corporation chartered under the laws of the State of Missouri, that it is domesticated and doing business in the Commonwealth of Virginia, that its principal business elsewhere is the manufacture and sale of beer, and that substantial quantities of beer manufactured by it are sold and consumed in Virginia, as alleged in Paragraph 5 of the bill of complaint, but denies that it manufactures, bottles or sells beer in the State of

Virginia, the only business conducted therein by it being the sale of yeast."

The particular billboard under attack is on Broad Street in the City of Richmond, is 10 x 10 feet high and 20 feet wide, and has on it the picture of three dogs, a bottle of beer, a can of beer and a glass of beer, with these words:

"Making Friends is Our Business"
"Anheuser-Busch"
"Budweiser"

Five other billboards have appeared throughout the State. On them is a picture of seven men in evening dress, sitting at a dinner table with a glass of beer before each of them, and on it is this legend:

"Perfect Host . . . To a Host of Friends"

The General Outdoor Advertising Company erected this Broad Street sign at the instance of and under a contract with Anheuser-Busch, Inc.

■ It is true that the power to regulate advertisements does not carry with it the power to forbid them entirely. That has not been done by the board. All licensed dealers are permitted to advertise. This beer company can become a licensed dealer and can advertise as do other licensed dealers. It is this type of advertisement adopted by this unlicensed dealer which is objectionable. The limitations on that privilege we can readily understand. The board was of opinion that it was their duty to restrain the stimulation of existing appetites or the creation of new ones and that the excessive use of advertisements was offensive to a large part of the public whose cooperation is essential in the administration of these liquor laws.

■ The police powers of the State with reference to the control of intoxicating liquors is to be distinguished from its powers to regulate traffic in other things. It would be different if the business sought to be followed was one of the ordinary pursuits in which all persons are enabled to

engage. *Danville* v. *Hatcher*, 101 Va. 523, 44 S. E. 723; *Town of Farmville* v. *Walker*, 101 Va. 323, 43 S. E. 558.

And to make assurance doubly sure, this section 62 of our Constitution was written:

"Power of the general assembly to enact liquor laws.— The general assembly may enact laws controlling, regulating, or prohibiting the manufacture or sale of intoxicating liquors."

In short, the Constitution has, itself, singled out this traffic as being in a class apart, from which it follows that rules and decisions dealing with other forms of merchandise and with rules and decisions which govern them are of little value.

This is a business affected with a public interest and must be dealt with from that viewpoint.

To unduly encourage, by display advertisements throughout the State, the use of alcoholic stimulants, or to stimulate that use, is highly undesirable. It would be offensive to many people and might bring back prohibition. This would adversely affect many interests — among them Anheuser-Busch, Incorporated.

The purpose of legislation of this kind "is undoubtedly to discourage the artificial stimulation of liquor consumption." *Amarone* v. *Brennan*, 126 Conn. 451, 11 A. (2d) 850. The board, in limiting advertisements, had this in mind as being applicable to the situation in Virginia as it is to the situation in Connecticut.

To license the sale of liquor and to deny to licensees the right to advertise at all is illogical. To permit our streets and highways to be crowded with billboards setting forth the charm of alcoholic stimulants is both irritating and undesirable; from which it follows that the board has acted from good reason and good judgment. It could not be expected to augment opposition to traffic entrusted to its care. Its preservation is in harmony with the present policy of the State, and it is the duty of the board to do those things within reason which will support that policy. All that has been done is reasonable. The signs under attack should be taken down.

For the foregoing reasons, the decree appealed from is reversed and the cause is remanded to the Circuit Court with direction to enter a decree in accordance with the prayer of the bill, but not inconsistent with the views expressed in this opinion, requiring the appellee forthwith to remove or cause to be removed the bill-boards, signs, posters and other similar outdoor advertising media advertising alcoholic beverages or beverages not in accordance with the rules and regulations of the Virginia Alcoholic Beverage Control Board, set forth in the bill, and enjoining and restraining the same appellee from the further erection and maintenance, or causing to be erected or maintained, any bill-boards, signs, posters or other similar outdoor advertising media advertising alcoholic beverages or beverages in a manner not in acccordance with the rules and regulations of the Virginia Alcoholic Beverage Control Board.

*Reversed and remanded.*