# CIRCUIT COURT OF THE CITY OF RICHMOND

Montgomery County
and Montgomery County
Board of Supervisors

    v.

Virginia Department of Rail
and Public Transportation,
Matthew O. Tucker, Director,
Virginia Department of Rail
and Public Transportation,
Commonwealth Transportation Board,
and Norfolk Southern Railway Co.

November 18, 2009

Case No. CL08-4290

BY JUDGE MELVIN R. HUGHES, JR.

The parties have each filed motions for summary judgment. The motions bring into question the constitutionality of a Rail Enhancement Fund: Multi Year Funding Agreement entered into by the Virginia Department of Rail and Public Transportation with Norfolk Southern Railway Company. The agreement, authorized by Va. Code § 33.1-221.1:1.1, known as the Rail Enhancement Fund, permits the DRPT to grant funds of the Commonwealth

of Virginia to railroads for improvements to their facilities. In the instance of this agreement funds will be permitted to Norfolk Southern for the acquisition, construction, and development of an intermodal facility in Montgomery County, Virginia.

The County and its Board of Supervisors brought this action challenging the Rail Enhancement Fund under two provisions of the Virginia Constitution. The provisions at issue are contained in Article X, Section 10, of the Constitution of Virginia: the "Internal Improvements Clause" and the "Credit Clause." The County's suit challenges the agreement based on Counts I and II of the Complaint. A third count, alleging improprieties with DRPT's administration of the agreement has been withdrawn.

The defendants, which are comprised of the DRPT, its director, the Commonwealth Transportation Board, and Norfolk Southern, cite Va. Code § 33.1-23.1(B) as the authority for the grant. The statute authorizes the allowance of state monies to "rail projects that, in the Board's determination, will result in mitigation of highway congestion." It is said that the agreement here targets congestion on Interstate 81 in the western portion of the state. The agreement envisions construction of an intermodal facility in Montgomery County and railway tunnels aimed at alleviating ever increasing and beyond capacity truck vehicular traffic on that highway. The facility will allow the transport of truck trailers by rail between cities for the purpose of reducing truck vehicular traffic on Interstate 81. The County opposes the facility on the grounds of federal preemption, environmental impact, noncompliance with the County's Comprehensive Plan, increased vehicular traffic in the immediate areas, and an adverse impact on tourism and economic development.

As noted, the provisions of the Virginia Constitution at issue are contained in Article X, Section 10, the so-called internal improvements clause and the credit clause. These provisions are mentioned respectively in Article X, Section 10, as follows:

> Section 10. *Lending of credit, stock, subscriptions and works of internal improvement.* — Neither the credit of the Commonwealth nor of any county, city, town, or regional government shall be directly or indirectly, under any device or pretense whatsoever, granted to or in aid of any person, association, or corporation; nor shall the Commonwealth or any such unit of government subscribe to or become interested in the stock or obligations of any company, association, or corporation for the purpose of aiding in the construction or maintenance of its work; nor shall the Commonwealth become a party to or

become interested in any work of internal improvement, except public roads and public parks, or engage in carrying on any such work; nor shall the Commonwealth assume any indebtedness of any county, city, town, or regional government, nor lend its credit to the same. This section shall not be construed to prohibit the General Assembly from establishing an authority with power to insure and guarantee loans to finance industrial development and industrial expansion and from making appropriations to such authority.

Considering the briefs for and in opposition to the motions and argument, the court decides to uphold the defendants' position in their motion and to reject that of the plaintiffs. The salient points for this action is as follows.

In October 2005, Norfolk Southern applied to the DRPT for funding under the Rail Enhancement Fund for various projects, including one under the Heartland Corridor. The Heartland Corridor envisions a system of rail infrastructure projects to facilitate the movement of containers from Norfolk to Chicago. Under an agreement with other states, including West Virginia and Ohio, travel time for rail container transport will be reduced and will serve to eliminate truck traffic on highways. Norfolk Southern's application was approved, and it entered into an agreement for an intermodal facility. Montgomery County was selected because it offered the most feasible site for access to Interstate 81.

The agreement calls for Norfolk Southern to bear $9,586,633. Virginia will contribute $22,350,000. The agreement provides for DRPT ensuring that the project operates for the parties' intended purpose. In the event a 150,000 truck annual reduction is not met in five years, DRPT is to be reimbursed in accordance with a formula specified in the Agreement. In the event Norfolk Southern abandons or ceases operations, DRPT shall be entitled to be reimbursed for the value of the project abandoned.

Under well-known governing principles, issues of constitutionality are to be analyzed in accordance with a presumption in favor of the constitutionality of legislative action. *Button v. Day*, 208 Va. 494, 258 S.E.2d 735 (1968). On matters of public policy, reserved to the Legislature, the Court has said that the "best indications . . . are to be found in the enactments of the Legislature." *Danville v. Hatcher*, 101 Va. 523, 532, 44 S.E. 723, 726 (1903). Every possible presumption of validity is to be afforded Legislative enactments. *Mumpower v. Housing Auth.*, 176 Va. 426, 444, 11 S.E.2d 732, 739 (1940). Any doubts are resolved in favor of constitutionality.

With the exception of one case, *Button v. Day*, the Supreme Court has turned down similar challenges under the credit clause by applying a standard of whether a given transaction has a "dominant or animating purpose" to promote public interests as opposed to private ones. *City of Charlottesville v. DeHaan*, 228 Va. 578, 323 S.E.2d 131 (1989). Indeed, the Court has declared that the "animating purpose" test has always been the law on these questions. *Id.* at 586, 323 S.E.2d at 135. The question of what animates the project this agreement covers is significant because the County alleges that the agreement is otherwise a device or pretense for granting the Commonwealth's credit to Norfolk Southern, that is, a use of public funds to serve private interests. However, the Court has made clear that, even if a sizeable benefit to the private entity might accrue, it can still be considered "incidental" if the primary purposes are to benefit the Commonwealth. *DeHaan*, 228 Va. at 588, 323 S.E.2d at 136; *Almond v. Day*, 197 Va. 782, 791, 91 S.E.2d 660, 667 (1956) (*"Almond I"*). The purpose of public benefit is borne out for this project for reasons mentioned, *infra*.

With regard to the credit clause, the weight of the authority cited in State Defendants' Memorandum for Summary Judgment, pp 2-8, all point to the Commonwealth's pronouncements of policy to effectuate and secure transportation access for public benefit. The record amply supports the conclusion that under the appropriate credit clause analysis, the Commonwealth's "animating purpose and the object it was designed to accomplish" is to serve a number of public purposes for the Commonwealth's benefit, and any benefit that might accrue to Norfolk Southern is only "incidental." *Almond I*, 197 Va. at 791, 91 S.E.2d at 667.

With regard to internal improvements, the County alleges, *inter alia*, that the construction, development, etc. of the intermodal facility by Norfolk Southern is neither incidental to nor necessary to the performance of the Commonwealth's governmental function. Specifically, the County contends that the intermodal facility fits squarely within the meaning of the term as defined by the Virginia Supreme Court, thereby violating the internal improvements clause in that DPRT will acquire an interest in a work of internal improvement owned by Norfolk Southern where the development of the facility is not a governmental function.

In challenges made under the internal improvements clause, the Supreme Court has consistently stated that "there is nothing in the history of the section to suggest that its purpose was to restrict or limit the State in the exercise of its governmental functions." *Almond v. Day*, 199 Va. 1, 7, 97 S.E.2d 824, 829 (1957) (*"Almond II"*). Furthermore, the cases demonstrate that State actions "necessary and incidental to the performance of a

governmental function" also are not restricted by the internal improvements clause. *Harrison v. Day*, 200 Va. 764, 107 S.E.2d 594 (1959) (rejecting limiting definition of "governmental functions" to those that are "inherent and necessary to government"); *Almond II*, 199 Va. at 8, 97 S.E.2d at 830. Moreover, the internal improvements clause itself grants an exception for state action that affects public roads and public parks. As for plaintiffs' internal improvements argument, to the contrary, the Supreme Court has held that "the construction, maintenance, and operation of a highway system" is a governmental function. *Almond II*, 199 Va. at 8, 97 S.E.2d at 830. As we have seen, the Commonwealth, over a multi-year period at multiple levels of State government, has made the determination that the development of the intermodal facility is necessary and incidental to the proper functioning of the Commonwealth's highway system.

The Court agrees with the defendants' observations of the thrust of the plaintiffs' contentions as to what Article X, Section 10, prohibits. Again, the Court will reject plaintiffs' assessments regarding the credit clause and the internal improvements clause. Plaintiffs read the provision too literally, and their criticisms do not appropriately regard the distillation of holdings in the Virginia Supreme Court cases. In the words of Professor Howard "the result of the decided cases is that [Article X, Section 10] prohibitions mean a great deal less than one might suppose on simply reading them." He further observes that Article X, Section 10, is not "a significant barrier to legislative response to modern problems which, after all, bear little resemblance to the historical context that first gave rise to these constitutional prohibitions." 2 A. E. Dick Howard, *Commentaries on the Constitution of Virginia*, 1130 (1974).

So, the Court is convinced that the agreement has been properly effectuated pursuant to constitutionally valid legislation of the Virginia General Assembly animating public purposes, governmental ones, aimed at providing for the common welfare of its citizenry to improve efficiencies of public roads.