# Richmond.

## ELSNER BROTHERS v. HAWKINS, COMMISSIONER.

### January 18, 1912.

1. PAWNBROKERS—*Nature of Business—Reputation.*—The business of pawn-brokers, because of the facility it furnishes for the commission of crime and for its concealment, is one of a class where the strictest police regulation may be imposed.

2. CITY OF RICHMOND—*Police Powers—Regulating Business of Pawn-brokers.*—The police powers conferred upon the city of Richmond by its charter, for the preservation of the safety, peace, and good order of its inhabitants, are, within the city limits, quite equal to those possessed by the legislature itself, and are amply broad to support an ordinance declaring it unlawful for any licensed pawnbroker, or other person acting as such, within the city limits, to receive as security, pledge, or pawn, or to purchase, sell, loan, or hire, any pistol, dirk, knife, razor, slung shot, or any weapon of like kind. Such an ordinance is not only reasonable, but eminently wise.

3. MUNICIPAL CORPORATIONS—*Police Powers—Ordinances—Presumption of Validity.*—Municipal corporations are *prima facie* the sole judges respecting the necessity for and the reasonableness of their ordinances. Every intendment is to be made in favor of the lawfulness of the exercise of municipal power making regulations to promote the public health and safety, and it is not the province of the courts, except in clear cases, to interfere with the exercise of that power

4. PAWNBROKERS—*State Revenue License—Restrictions by City Ordinance—City of Richmond.*—It was not the purpose or effect of the act of Assembly laying a tax on the business of selling pistols, dirks, etc., for revenue purposes, to give to every person who paid the tax and obtained a license the right to carry on such business, notwithstanding any police regulations which might otherwise lawfully be made for the good government of a city or town, and the ordinance of the city of Richmond forbidding pawnbrokers, or other persons acting as such, to sell, loan, or hire such articles is a valid exercise of its police power, and not in conflict with said act. The effect of the act was to restrict, not to enlarge, the right of making such sales, nor to exempt them from lawful police regulations.

Error to a judgment of the Hustings Court of the city of

Richmond, refusing a writ of mandamus. Judgment for the respondent. Petitioner assigns error.

*Affirmed.*

The opinion states the case.

*Wyndham R. Meredith,* for the plaintiffs in error.

*H. R. Pollard* and *Minetree Folkes,* for the defendant in error.

HARRISON, J., delivered the opinion of the court.

The grand jury of the city of Richmond having recommended, in the interest of the public safety, that pawnbrokers should not be . allowed to deal in weapons which may be used for personal injury, the council of the city passed an ordinance, approved April 18, 1911, providing that it shall be unlawful for any licensed pawn-broker, or any other person acting as pawnbroker, to receive as security, pledge, or pawn, or to purchase, sell, loan, or hire, any pistol, dirk, bowie knife, razor, slung shot, or any weapon of like kind. Any person violating the provisions of this ordinance was made liable to a fine of not less than five nor more than twenty-five dollars for each offence, recoverable before the police justice of the city.

The plaintiffs in error are a duly licensed firm of pawnbrokers, who had given the bond and complied with all the police regulations prescribed by the State statute, and had paid the license required, both by the State and the city of Richmond.

Section 140 of the State tax bill (Code 1904, p. 2253) provides that no person, firm, or corporation shall sell pistols, dirks, or bowie knives without having first procured a license therefor. The sum of $20.00 *per annum* is required to be paid to the State as a special license tax for the privilege of transacting the business of selling pistols, dirks, or bowie knives by any such person, firm, or corporation, and any violation of the provisions mentioned is made a misdemeanor, punishable by fine. Under this section 140 of the State tax bill, the plaintiff applied to the proper officials of the city of Richmond for a special license authorizing them to deal in pistols, etc. Acting in obedience to the city ordinance of April

18, 1911, making it unlawful for any licensed pawnbroker to deal in pistols, etc., these city officials refused to issue the license asked for. Thereupon the plaintiffs in error applied to the Hustings Court for the city of Richmond for a writ of mandamus, compelling the defendants in error to issue the license authorizing them to deal in pistols, etc. The hustings court having denied the writ of mandamus, and dismissed the petition praying therefor, its judgment is brought under review by this writ of error.

The record shows that the ordinance of April 18, 1911, was passed by virtue of the police power which the city of Richmond deemed to be vested in it, and was intended to remedy, to some extent, the growing and dangerous practice, by the lawless and disorderly class in the community, of carrying concealed weapons.

The plaintiffs in error insist that the city of Richmond did not have the authority, under its police power, to pass the ordinance in question; that the statute of the State having made it lawful for a person, firm, or corporation to deal in pistols, etc., upon the payment of a license tax, the city of Richmond could not, under its police power, deny such privilege to pawnbrokers.

The business of pawnbrokers, because of the facility it furnishes for the commission of crime and for its concealment, is one which belongs to a class where the strictest police regulation may be imposed. This is shown by our legislation, both State and local, on the subject, and by the adjudications of courts. Acts of Assembly, 1904, p. 196 (Code 1904, p. 22, 32); Ordinances of Richmond City, ch. 48, secs. 1, 2; Freund on Police Power, sec. 93; *Lauder* v. *Chicago*, 111 Ill. 891, 53 Am. Rep. 625; *Grand Rapids* v. *Brandy*, 105 Mich. 670, 64 N. W. 29, 55 Am. St. Rep. 472, 32 L. R. A. 116.

In the case last cited it is said that "it is a matter of common knowledge that thieves resort to these places to dispose of their stolen goods, and that unscrupulous and oftentimes criminal persons are engaged in the business. The business, therefore, comes expressly within the control of the police power of the State, and is properly subject to reasonable rules and regulations."

Very broad and comprehensive police powers are delegated by the legislature to the city of Richmond. Under its charter the council has power to enact suitable ordinances to secure and

7

promote the general welfare of the inhabitants of the city, such as they may deem proper for the safety, health, peace, good order, and morals of the community. In addition, they have the power to make such ordinances and regulations as may be deemed desirable and suitable to prevent vice and immorality, to preserve public peace and good order, to prevent and quell riots, disturbances, and disorderly assemblages, etc. For a violation of any of its ordinances, the council has power to prescribe any fine or penalty (except when a fine or penalty is otherwise provided for in the charter) not exceeding five hundred dollars, and may provide that, on failure to pay the fine or penalty imposed, the offender shall be imprisoned in the jail of the city for any term not exceeding three calendar months.

The police powers delegated by these provisions to the city are, within its limits, quite equal to those possessed by the legislature itself. They are certainly amply broad to cover and include the right of the city, in the interest of its good order and the protection of its citizens from violence, to provide that it shall be unlawful for any licensed pawnbroker, or other person acting as pawnbroker, to receive as security, pledge, or pawn, or to purchase, sell, loan, or hire, any pistol, dirk, bowie knife, etc. In view of the character of the business conducted by these dealers, where the criminally disposed can go and for a pittance procure a deadly weapon for a deadly purpose, that he would not otherwise be able to obtain, the ordinance assailed is not only reasonable, but eminently wise, as tending to minimize the commission of crime in a populous city.

The rule is generally recognized that municipal corporations are *prima facie* the sole judges respecting the necessity and reasonableness of their ordinances. Every intendment is to be made in favor of the lawfulness of the exercise of municipal power making regulations to promote the public health and safety, and it is not the province of courts, except in clear cases, to interfere with the exercise of the powers vested in municipalities for the promotion of the public safety. McQuillin on Ordinances, sec. 186; 2 Dillon on Mun. Cor. (5th ed.), sec. 649; *California Red Co.* v. *Sanitary Red Works*, 199 U. S. 306, 319, 26 Sup. Ct. 100, 50 L. Ed. 24; *Wagner* v. *Bristol Belt Line Co.*, 108 Va. 594, 598, 62 S. E. 391, 25 L. R. A. (N. S.) 1278.

The plaintiffs in error contend that, under section 140 of the revenue bill, *supra,* any person, firm, or corporation can sell pistols, dirks, etc., by first procuring a license therefor; that the ordinance forbidding such a license to pawnbrokers is in conflict with the State law, and, therefore, void, unless the city of Richmond had express power to enact the same.

This question was settled in this State more than fifty years ago. *Mayo, Mayor, &c.* v. *James,* 12 Gratt. (53 Va.) 17. In that case, Clinton James, a free negro, who had been duly licensed to keep a cook-shop under the provisions of an act of Assembly of April 17, 1853, complained that he had been unlawfully prosecuted before the mayor of the city of Richmond, for the violation of an ordinance thereof, which provided that no negro should keep a cook-shop within the city, under the penalty of stripes, at the discretion of the mayor; insisting that the ordinance was in conflict with the act of Assembly, and therefore void. The circuit court awarded a writ of prohibition, in vacation, restraining the mayor from enforcing the ordinance, and upon the hearing refused to discharge the writ, and gave judgment against the city. Upon appeal, that judgment was reversed by this court, upon the ground that a statute requiring a license to keep a cook-shop, and laying a tax upon it, is not in conflict with, and does not avoid, an ordinance of the city of Richmond, passed in pursuance of its charter, prohibiting or restricting the keeping of cook-shops by free negroes within the city. In reaching this conclusion, Judge Moncure, speaking for a unanimous court, says: "The only object of the act was to aid in raising revenue by laying a tax on the business of keeping a cook-shop. It was not the object or effect of the act to give to every person who paid the tax and obtained a license to keep a cook-shop the right to do so, notwithstanding any police regulations which might otherwise lawfully be made for the good government of a city or town, much less to repeal or annul any such regulations in actual existence at the time of the passage of the act. If the ordinance would have been lawful had there been no such act, it is lawful notwithstanding the act; for there is nothing in the act to render it unlawful. The business of keeping a cook-shop, before the passage of the act, was a lawful business, which any man might pursue, subject only to such lawful police regulations as

Opinion.

might be made in regard to its being carried on within the limits of a town. The effect of taxing it was to restrict, not to enlarge, the right of pursuing it, nor to exempt it from such lawful police regulations."

The case at bar is in all essential particulars like the case cited, and is controlled by it. The object of section 140 of the tax bill, like the act in *Mayo* v. *James, supra,* was to aid in raising revenue. It was not the purpose or effect of the act, in laying a tax on the business of selling pistols, dirks, etc., to give to every person who paid the tax and obtained a license the right to carry on such business, notwithstanding any police regulations which might otherwise lawfully be made for the good government of a city or town. The ordinance assailed would have been lawful had there been no section 140 of the tax bill, and it is lawful notwithstanding that act; for there is nothing in the act to render it unlawful or in conflict therewith. As said in *Mayo* v. *James, supra,* with respect to the keeping of cook-shops in Richmond by free negroes, the propriety and necessity of regulating, restraining, or wholly interdicting the right of pawnbrokers to deal in pistols, dirks, etc., in the city of Richmond, must be apparent to all.

For the foregoing reasons, we are of opinion that the ordinance of April 18, 1911, which is called in question by this proceeding, is not in conflict with section 140 of the tax bill; that the city council had the power, under its charter, to enact the same, and that the judgment of the Hustings Court of the city of Richmond, so holding, must be affirmed.

*Affirmed.*