## Richmond

## POLGLAISE v. COMMONWEALTH.

### January 16, 1913.

1.  HIGHWAYS—*Regulating Use—Power of Legislature.*—The legislature
    of the State has absolute power to make any reasonable pro-
    visions it may deem necessary with reference to the public high-
    ways of the counties, or cities and towns within the State, regu-
    lating the uses that may be made of them.

2.  HIGHWAYS—*Regulating Use—Board of Supervisors—Width of Tires.*
    Under the general road law of this State full and complete
    power is conferred upon the boards of supervisors of the several
    counties to make such rules and regulations as they may deem
    best for the working, keeping in order and repair of the roads
    and bridges of their respective counties, but this power is coupled
    with the provision that "the board shall enact no law fixing
    the width of tires to be used on vehicles until after the ques-
    tion shall have been submitted to the qualified voters of the
    county and a majority of said voters shall have voted for the
    proposed law fixing the width of tires."

3.  HIGHWAYS—*Width of Tires—Election—Notice—Case at Bar.*—A pe-
    tition for an election under the foregoing provision was accom-
    panied by a resolution of the board of supervisors stating that
    in case the election was carried the board would fix upon the
    following regulations, to-wit: "Six horse wagon six inch tires,
    four horse wagon four inch tires, two horse wagon three inch
    tires," and that the regulations would only apply to lumber
    and tie haulers over the permanent roads of the county. The
    resolution also directed the clerk of the board to furnish a
    copy thereof to two newspapers published in a city in said
    county, with request that it be published for the information of
    the voters, and no complaint is made that the publication was
    not made. The election was held and a majority of the voters
    voted in favor of the proposed law.

    *Held.* This was a sufficient compliance with the statute as to notice
    to the voters of the county with respect to the question to be
    submitted to them, and that, in pursuance of such election, the
    board of supervisors had the right and power to pass a resolu-
    tion declaring that "all lumber, wood and tie haulers be, and
    they are hereby, restricted in their loads over the permanent

roads of said county, until the further order of said board as follows: Six hundred feet on narrow tires, including three inch tires; one thousand feet (1,000) on four inch tires; one-half cord of wood on narrow tires, including three inch tires; one cord of wood on four inch tires; eight ties on narrow tires and fourteen ties on four inch tires."

4. HIGHWAYS—*Board of Supervisors—Powers as to Roads.*—In the matter of the construction, maintenance and care of the public roads, the boards of supervisors of the respective counties are made a co-ordinate branch of the State government as fully as are the common councils of the several cities and towns within the State, and the full power and authority of the State for the purposes for which these agencies were established is vested in them, and while acting within their well recognized powers, or exercising discretionary power, the courts are wholly unwarranted in interfering, unless fraud is shown, or the power or discretion is manifestly abused to the oppression. of the citizen.

5. CONSTITUTIONAL LAW—*Equal Protection—Class Legislation—Highways—Use by Particular Classes.*—Putting the haulers of lumber, ties and wood in a separate class, and differentiating them from other persons hauling over the public roads of the Commonwealth, and requiring them to use wagon tires of designated widths, is not class legislation and does not deny to such persons the equal protection of the law. It is a matter of common knowledge that such hauling generally produces greater damage to the roads than any other class of hauling. The classification is natural and reasonable, and embaces all persons who are or may be in like situation, and this is all that is necessary.

6. CONSTITUTIONAL LAW—*Class Legislation—Permissible Classification.* The rules by which classification for the purpose of legislation must be tested are as follows:

   (1) The equal protection clause of the fourteenth amendment does not take from the State the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without reasonable basis, and therefore is purely arbitrary. (2). A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety, or because in practice it results in some inequality. (3.) When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. (4). One who assails

the classification of such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary.

Error to a judgment of the Circuit Court of Spotsylvania county imposing a fine upon the plaintiff in error for violating the road law of said county.

The opinion states the case.

*A. T. Embrey* and *F. W. Coleman,* for the plaintiff in error.

*Samuel W. Williams, Attorney-General,* and *T. S. Coleman,* for the Commonwealth.

CARDWELL, J., delivered the opinion of the court.

Benjamin Polglaise was tried and convicted in a justice's court of a violation of the road law of Spotsylvania county, in that he "did haul, with a narrow-tire wagon, over the permanent roads of Spotsylvania county over six hundred feet of lumber, contrary to the resolution of the board of supervisors of Spotsylvania county, passed, pursuant to law, on the 21st day of February, 1912."

Ten warrants were issued against the accused for like offenses, all to be tried at the same time, but by agreement only one was tried and like judgments were to be entered in the other nine cases. Upon his conviction in the case tried, the accused appealed to the circuit court, where he was tried before a jury, which found him guilty and fixed his punishment at a fine of $15.00, upon which verdict judgment was entered by the court, and to that judgment this writ of error was allowed.

At the trial in the circuit court plaintiff in error duly excepted to the introduction of certain evidence, which ex-

ception is made a part of the record by bill of exceptions, but by agreement in writing filed with the record he waives said exception and submits his case for decision by this court upon the single question whether the regulation for hauling over the permanent roads of the county, adopted by the board of supervisors, is a valid and legal regulation; in other words, "whether the order of the board of supervisors of said county of February 21, 1912, exhibit 4 with bill of exceptions No. 2, was a valid order."

It is admitted by plaintiff in error that he did haul lumber over the permanent roads of the county in violation of the regulation adopted by the board of supervisors, so that the concrete question to be determined by this court is whether or not, under any circumstances, the regulation of the board of supervisors complained of would be a proper exercise of the power delegated to them by the Constitution and laws of this State.

The record does not disclose the facts and circumstances existing at the time the regulation in question was made, nor the special reasons therefor, which actuated the board of supervisors in adopting it.

It is beyond question that the legislature of the State has absolute power to make any reasonable provisions that it may deem necessary with reference to the public highways of the counties or cities and towns within the State, regulating the uses that may be made of them. Prior to the adoption of the present Constitution the control and regulation of the uses to be made of the public roads of the Commonwealth in the several counties was vested in the county courts, but by section 65 of the present Constitution it is provided that "the General Assembly may, by general laws, confer upon the boards of supervisors of counties, and the councils of cities and towns, such powers of local and special legislation as it may from time to time deem expedient, not inconsistent with the limitations contained in this Constitution."

Pursuant to this provision of the Constitution, the legislature, by an act approved March 12, 1904, entitled "An act to provide for the establishment, proper construction and permanent improvement of the public roads and landings, for building and keeping in good order and repair of all public roads, bridges, causeways and wharves in the several counties of this State, and to repeal chapter 43 of the Code of Virginia" (Acts 1904, p. 191), delegated to the boards of supervisors of the several counties the power to establish, construct and permanently improve the public roads, landings, etc., and to keep the same in good order and repair. The first section of said act is as follows: "Be it enacted by the General Assembly of Virginia, That the board of supervisors of their respective counties shall have the control, supervision, management and jurisdiction over all county roads, causeways and bridges, landings and wharves erected or repaired within the State." The act then proceeds to confer large powers of taxation and expenditure of the money so raised by the boards of supervisors, and in other matters of detail in which the several boards were to be called upon to act. Sections 1 and 13 of the act were thereafter amended, but we do not deem it necessary to make special reference to those amendments or to set them out here.

By an act of the legislature approved March 16, 1906— Acts 1906, p. 352—section 834-h was added to chapter 36 relating to boards of supervisors, which added section is as follows: "The boards of supervisors of the several counties of the Commonwealth shall have power to enact special and local legislation in their respective counties, not in conflict with the Constitution and the general laws of the Commonwealth, as they may deem expedient to protect the public roads, ways, and bridges of such county from encroachment or obstruction, or from any improper or exceptionally injurious use thereof.

"Any violation of such enactments shall be deemed a misdemeanor, and shall be punishable by fine of not less than five dollars nor more than one hundred dollars for each offense.

"Public notice of such legislation by the board of supervisors shall be given by posting a copy of such enactment at each voting precinct in the county, and on the front door of the courthouse, not less than ten days before it is to go into effect, or by publishing a copy thereof at least once in a newspaper published in the county not less than ten days before it is to go into effect."

The statute was further amended by an act approved March 15, 1910—Acts 1910, p. 339—by adding to the second paragraph of section 1 of the amendatory act just referred to, these words, "and this power shall extend to and be exercised over turnpike roads, the control of which has been given to said boards of supervisors, and whether tolls be taken therefrom or not; provided, the board of supervisors shall not enact a law fixing the width of tires to be used on vehicles until after the question shall have been submitted to the qualified voters of the county at a general or special election, and a majority of said voters shall have voted in favor of the proposed law fixing the width of tires."

There was no application of the original statute—act of March 12, 1904, *supra*—nor of the amendments of that statute which followed, to a county in the State having a special road law; and there being no special road law in force in the county of Spotsylvania, the general power of the board of supervisors of that county, in making regulations for the keeping of the roads in good repair, is to be found in the statutes above referred to and which very plainly were intended to confer full and complete power on the boards of supervisors of the several counties to make such rules and regulations as they might deem best

for the working, keeping in order and repair of the roads and bridges of the county; but this power was coupled with the provision, "the board shall enact no law fixing the width of tires to be used on vehicles until after the question shall have been submitted to the qualified voters of the county, and a majority of said voters shall have voted for the proposed law fixing the width of tires."

On the 11th of September, 1911, the board of supervisors of Spotsylvania county adopted a resolution petitioning the circuit court of the county to order an election on November 7, 1911, on the question of broad tires, which resolution contained the following provision: "Now in order to furnish the voters with full information on the subject, the board of supervisors do hereby declare that in case the election be carried directing the board to fix the width of tires, that said board will fix upon the following regulations, viz.: six horse wagon six inch tires, four horse wagon four inch tires, two horse wagon three inch tires. That said board will put said regulations into effect six months from date of said election, and that these regulations will only apply to lumber and tie haulers over the permanent improved roads of said county."

Responding to said petition of the board of supervisors, the circuit court, on October 2, 1911, entered its order directing "that an election be held in said county of Spotsylvania on Tuesday, November 7, 1911, for the purpose of submitting to the qualified voters of said county the question whether or not the board of supervisors of said county shall enact a law fixing the width of tires to be used on vehicles passing on and over the public roads of Spotsylvania county."

The election ordered was held and carried in favor of the proposed action of the board of supervisors, and, therefore, as to the width of tires prescribed thereby it was to and did become effective on the 7th of May, 1912.

The regulation complained of by plaintiff in error, adopted pursuant to the full and complete power in the board to make such "directions as they may deem best for working, keeping in order and repairing of the roads and bridges of the county," as set forth in the statutes adverted to, is, so far as pertinent to the issue involved, as follows: "Be it resolved by the board of supervisors of Spotsylvania county that the resolution adopted on March 29, 1911, in reference to the amount of lumber and railroad ties to be hauled over the permanent roads of said county be, and the same is hereby revoked; and it appearing to the board that immediate action must be taken in order to protect the permanent roads of said county from being cut up by heavy hauling; therefore, be it resolved by the said board of supervisors that all lumber, wood and tie haulers be, and they are hereby, restricted in their loads over the permanent roads of said county until further order of said board as follows: Six hundred (600) feet on narrow tires, including three inch tires; one thousand (1,000) feet on four inch tires; one-half cord wood on narrow tires, including three inch tires; one cord of wood on four inch tires; eight ties on narrow tires, including three inch tires, and fourteen ties on four inch tires; and be it further resolved that all persons hauling over said permanent roads, other than the above, shall be restricted in their loads so as not to exceed two thousand pounds to each wagon, until further order of the board. * * * This resolution shall take effect forthwith. Any and all persons violating the foregoing resolution shall be fined not less than $2.50 nor more than $10.00 for each offense. * * * And the clerk of this board is directed to transmit a copy of this resolution to the Fredericksburg newspapers for publication."

Clearly it was the purpose of the constitutional provision and the legislative enactments pursuant thereto, *supra,* to commit to the boards of supervisors of the several counties

the whole matter of opening, constructing, maintaining and protecting the public highways in their respective counties, and to clothe them with the right to exercise the police power of the Commonwealth in the enactment of such special and local laws and regulations as in the judgment of the respective boards might be deemed necessary or proper to protect the public roads of the county from an improper or exceptionally injurious use thereof, which power and authority conferred upon the boards of supervisors was limited only by the Constitution and general laws of the State.

There is no contention made in this case that the regulations adopted by the board of supervisors complained of are contrary to the Constitution or general laws of the State, but the contention is made, in the petition for this writ of error, that this regulation is illegal and void because it proposes to regulate the width of tires to be used on vehicles passing over the improved highways of the county before there had been a vote of the people authorizing the board to make such regulation, as is required by the statute.

It will be observed, from what has gone before in this opinion, that the only limitation upon the broad powers of legislation conferred upon the boards of supervisors of the several counties having no special road law, as to roads, their construction, maintenance, etc., is to be found in the amendatory act of March 10, 1910, *supra,* which provides that "the board of supervisors shall not enact a law fixing the width of tires to be used on vehicles until after the question shall have been submitted to the qualified voters of the county at a general or special election, and a majority of said voters shall have voted in favor of the proposed law fixing the width of tires."

In this case the resolution of the board of supervisors petitioning the circuit court to order an election on the

question "whether or not the board * * * shall enact a law fixing the width of tires" set out full information to the voters at the election that in case the election be carried directing the board to fix the width of tires, the board would fix upon certain regulations which were stated in full; that the board would put said regulations into effect six months from date of the election; and that the regulations would apply to lumber and tie hauling over the permanent improved roads of the county. The resolution further directed the clerk of the board to furnish a copy thereof to the Fredericksburg *Journal* and *Free Lance,* with the request that said newspapers publish same for the benefit of the voters, which was doubtless done, as nothing appears to the contrary in the record; and this was a compliance with the requirement of the statute, *supra,* as to notice to the voters of the county with respect to the question to be submitted to them at the election directed by the order of the court to be held.

The regulation adopted by the board of supervisors on February 21, *supra,* does not attempt to regulate the width of tires to be used on vehicles passing over the improved highways of the county, before there had been a vote of the people authorizing the board to make such regulation, but leaves all vehicles, with narrow or wide tires, to pass over the roads at the will of the owner or occupant just as they might have done before the said resolution was adopted, the only purpose of the resolution, as expressed on its face, being to protect the highways, which were being constructed and repaired at a great cost to the public, from being cut up and damaged by hauling excessive loads over them.

It is not controverted that the general laws of the State, enacted pursuant to the provisions of our Constitution, vest in the boards of supervisors of the several counties full power, and impose upon them the duty, to protect the

public roads within their respective counties, and it is a matter of common knowledge that roads are more injured by hauling a heavy weight over them on narrow tires than on broad tires. It is equally as well within the common knowledge of all observant people having occasion to use the public highways in the rural sections that lumber, wood and tie haulers not only carry upon their wagons or other vehicles heavier loads than others using like vehicles on the roads, but frequent the roads in all seasons, and practically without regard to the condition of the roads over which they are passing, to a market or a shipping point.

In the matter of the construction, maintenance and care of the public roads, the boards of supervisors of the respective counties are made a co-ordinate branch of the State government as fully as are the common councils of the several cities and towns within the State, and the full power and authority of the State for the purposes for which these agencies were established is invested in them.

The principles of law applicable when the courts are called upon to consider the validity of a regulation prescribed by the board of supervisors of a county, in a resolution adopted for the protection of the roads within their control and supervision, are the same as those applied in passing upon a municipal ordinance having in view the protection of the streets and highways of the municipality.

"The General Assembly is a co-ordinate branch of the State government, and so is the law-making power of municipal corporations within the prescribed limits. It is no more competent for the judiciary to interfere with the legislative acts of the one than the other. Where, therefore, municipal corporations or their officers are acting within well recognized powers, or exercising discretionary power, the courts are wholly unwarranted in interfering unless fraud is shown, or the power or discretion is being

manifestly abused to the oppression of the citizen."
*Roanoke Gas Co.* v. *City of Roanoke*, 88 Va. 810, 14 S. E.
665; *Wagner* v. *Bristol Belt L. Co.*, 108 Va. 594, 62 S. E.
391, 25 L. R. A. (N. S.) 1278.

"It has been repeatedly decided by this court, and well
recognized by text-writers, and in the decided cases in
other jurisdictions as settled law, that courts can inter-
fere only to prevent a fraudulent and manifestly abusive
or oppressive exercise of the powers conferred upon the
council of a city by its charter or the general law, since
the discretion of municipal corporations, within the sphere
of their powers, is as wide as that possessed by the govern-
ment of. a State." *Wagner* v. *Bristol B. L. Co., supra;*
*Elsner Bros.* v. *Hawkins, Com'r,* 113 Va. 47, 73· S. E. 479.

In *People* v. *Wilson,* 16 N. Y. Supp. 583, the court said:
"It is reasonable to protect paved streets from being
crushed and ruined by loads of enormous weight, borne
upon vehicles with wheels of narrow tires, which cut
through the pavement, when the broader tire will bear the
load without causing such injury. It is reasonable that
the carrier of heavy loads shall so exercise ·his own rights
as not to affect those of others."

The Supreme Court of Illinois, in the case of *Harrison*
v. *The City of Elgin,* 53 Ill. App. 452, when affirming the
validity of an ordinance of the city of Elgin providing
that no person shall, by himself, his servants or his agents,
drive, propel or cause to be driven or propelled, upon or
along any street in the city, any loaded vehicle which with
its load weighs 3,500 pounds or upwards, unless the fel-
loes and tires upon the wheels of such vehicle shall be three
inches or more in width, said: "Section 63 of the act relating
to cities and villages gives the power to such municipal cor-
porations to regulate the use of streets. The exercise of
that power may in a measure restrain the business of haul-
ing. Teamsters engaged in heavy hauling may suffer from

inconvenience in being prevented from driving on certain streets, a regulation in force in all large cities. Before an ordinance which regulates the manner in which streets shall be used shall be held void, it must appear that it is unreasonable and oppressive.

"As we look at the ordinance before us, it is but a wise and lawful regulation. To require persons hauling greater loads than 3,500 pounds to use wagons with wheel tires three inches wide will restrain teamsters using wagons with wheel tires of a less width to loads of less weight than 3,500 pounds, but in our view the city has the power to so restrain for the purposes of protecting the streets."

The validity of an ordinance of the city of Boston, regulating the weight of the loads to be hauled over the streets, was called in question in the case of *Commonwealth* v. *Mulhaul*, 162 Mass. 496, 39 N. E. 183, 44 Am. St. Rep. 387, on the ground that it was beyond the power of the city authorities, unreasonable, etc., but the ordinance was held to be valid, the opinion of the court saying: "If the ordinance is within the class of ordinances in regard to which this statute permits the mayor and aldermen to exercise their judgment and discretion, we cannot declare it void on the ground that we might have decided the question as to the ordinance differently: If they deem such an ordinance necessary to the public safety or convenience, and it is not a clear invasion of private rights secured by the Constitution, it must be regarded as a regulation made under legislative authority. We think the facts offered to be proved do not take the case out of the field of regulation by the legislature, or by the mayor and aldermen as a local tribunal acting under the authority of the legislature. If it appeared that the ordinance could have no relation to the safety or convenience of the public in the use of the streets, the fact that the mayor and aldermen declare the regulation to be necessary would not give it

validity. But we cannot say they were in error in decid-
ing that the use of heavily loaded vehicles is a matter af-
fecting the public in the use of the streets, which may be
regulated under the statute, nor can we say that the ordi-
nance is anything more than a regulation, upon the neces-
sity of which their decision is final."

Upon reason and authority, the matter of regulating the
amount of loads to be hauled over the public highways is
generally recognized as properly within the discretion of
the authorities charged by law with the care and main-
tenance of the public highways; and it is likewise settled
that when any such regulation, within the scope of the
authority of the law-making power, has been passed, that
the *prima facie* presumption is that the regulation is rea-
sonable and proper, and in order to warrant the court in
coming to a different conclusion there must be evidence
introduced showing that in the particular case the discre-
tion granted to the legislative body has been abused, and
the rights of individuals taken from them.

In the case at bar there is no evidence of any sort what-
soever appearing in the record to show that the regulation
adopted by the board of supervisors for the use to be made
of the permanently improved roads of the county of Spot-
sylvania, which is complained of, was unreasonable or un-
necessary. It does, however, appear that the county had
issued bonds for large amounts, the proceeds of which were
used in the building and improvement of its highways, and
the resolution of the board of supervisors regulating the
uses to be made of these roads states on its face that it ap-
peared to the board "that immediate action must be taken
in order to protect the permanent roads of the said county
from being cut up by heavy hauling." It is not even sug-
gested that this declaration on the part of the board of
supervisors was not sincere and made in perfectly good
faith.

The further contention of plaintiff in error that the regulation adopted by the board of supervisors, of which he complains, is invalid as denying to him the equal protection of the law, and as class legislation and unreasonable, is wholly without merit.

This contention is based upon the classification made putting the haulers of lumber, ties and wood in a separate class, and differentiating them from other persons hauling over the roads. From what has gone before in this opinion it will be seen that it is a matter of common knowledge that the hauling of lumber, wood and ties over the public roads of the county generally produces greater damage to the roads than any other class of hauling. The general principle is "legislation intended to affect a particular class, and not the public at large, must extend to and embrace equally all persons who are or may be in the like situation and circumstances, and the classification must be natural and reasonable, not arbitrary and capricious." *Sutton* v. *State* (Tenn.) 33 L. R. A. 589.

"Where the reasonableness of a municipal ordinance is in issue, all reasonable doubts are resolved in favor of the municipality. An ordinance requiring wagons having axles of a specified diameter to have tires of a specified width, is not unreasonable, and will not be declared invalid on the theory that it is unreasonable and oppressive and works a hardship on a transfer company." *State* v. *Clifford,* 228 Mo. 194, 128 S. W. 755.

The rules by which classification for the purpose of legislation must be tested are stated concisely and clearly in the opinion of the United States Supreme Court in *Lindsley* v. *Natural Carbonic Gas Co.,* 220 U. S. 61, 55 L. Ed. 369, 31 Sup. Ct. 337, as follows: "(1) The equal protection clause of the fourteenth amendment does not take from the State the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that

regard, and avoids what is done only when it is without any reasonable basis, and therefore is purely arbitrary. (2) A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety, or because in practice it results in some inequality. (3) When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. (4) One who assails the classification of such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary."

For the foregoing reasons we are of opinion that the judgment of the circuit court under review is right, and it is, therefore, affirmed.

*Affirmed.*