## VALIDITY OF THE CHATTEL LOAN LICENSE LAW.

Common Pleas Court of Hamilton County.

### Ex Parte Herman Wessell.[*]

Decided, March 27, 1916.

*Constitutional Law—Prohibition of the Making of Loans on Chattels or Wage Earnings Without a License—Authority of Superintendent of Banks to Revoke License—Exemption of Pawn Brokers—Inclusion of Plain Notes Within the Terms of the Act—Classification—Validity of the License Act.*

Sections 6346-1 to 6346-7 inclusive, as amended and supplemented (106 Ohio Laws, 281), providing for the regulation and licensing of the loaning of money without security upon personal property, and the purchasing and making of loans upon salaries or wage earnings, are within the police power of the state and constitute a valid enactment.

*Miller & Foster*, for petitioner.

*Edward C. Turner*, Attorney-General; *Charles F. Hornberger*, special counsel; *George B. Okey, John J. Chester* and *Hugh Huntington*, for state.

Warner, J.

The petitioner for this writ had been arrested upon the charge of unlawfully, wilfully and knowingly engaging and continuing in the business of making loans on plain notes at a rate of interest in excess of eight per cent. per annum without first obtaining a license so to do from the Superintendent of Banks of this state and complying with the law with reference to such business. He claims that his arrest and detention is illegal on the ground that the statute under which he is charged is unconstitutional. The case was submitted on the pleadings.

*Affirmed by the Court of Appeals, without opinion, May 3, 1916. Court of Appeals affirmed by the Supreme Court without opinion, November 21st, 1916.

The statute referred to consists of Sections 6346-1 to 6346-7 inclusive of the General Code, as amended and supplemented in Volume 106 Ohio Laws, page 281.

It is contended on behalf of the petitioner that said statute contravenes the equality and due process provisions of the federal and state Constitutions.

Section 6346-1 of said act is as follows:

"It shall be unlawful for any person, firm, partnership, association or corporation, to engage, or continue in the business of making loans, on plain, endorsed, or guaranteed notes, or due bills, or otherwise, or upon the mortgage or pledge of chattels or personal property of any kind, or of purchasing or making loans on salaries or wage earnings, or of furnishing guarantee or security in connection with any loan or purchase, as aforesaid, at a charge or rate of interest in excess of eight per centum per annum, including all charges, without first having obtained a license so to do from the superintendent of banks and otherwise complying with the provisions of this act."

Section 6346-2, in one part thereof, declares:

"The said superintendent of banks may revoke any license, if the licensee, his officers, agents, or employees shall violate any of the provisions of this act. Whenever, for any cause, such license is revoked, said superintendent of banks shall not issue another to said licensee until the expiration of at least one year from the date of revocation of such license."

Section 6346-5 provides that:

"Nothing in this act shall apply to pawn brokers who obtain a municipal license as provided in Sections 6337 to 6346, inclusive, of the General Code, or to national banks or to state banks, or any person, partnership, association or corporation whose business now comes under the supervision of the superintendent of banks."

Section 6346-8 declares that:

"Any person, firm, partnership, corporation or association, and any agent, officer or employee thereof, violating any provision of this act, shall for the first offense be fined not less than fifty dollars nor more than two hundred dollars, and for a second offense not less than two hundred nor more than five hun-

dred dollars, and be imprisoned for not more than six months. The superintendent of banks upon such second conviction shall revoke any license theretofore issued to such person, firm, partnership, corporation or association."

There are other provisions in this act prohibiting a licensee from having more than one office under the same license; requiring a licensee to furnish a borrower with a copy of Section 6346-5; making a licensee guilty of usury if he exacts interest in excess of that provided in this act; and requiring assignments of salary, wages or earnings by a married person to be signed by the consort of such person if they are living together.

The provisions of Section 6346-1 as to loans upon plain notes, the excerpts from sections of the act, and other provisions of this act referred to above are all attacked in this proceeding and alleged to be unconstitutional and beyond the lawful authority of the General Assembly.

It is unnecessary to discuss or cite well known authority as to most of these contentions. It is clear and well settled that the Legislature, under the police power, may, in its discretion, include in legislation of this sort affecting the public weal many of the provisions above mentioned. Those relating to plain notes, the authority of the superintendent of banks to revoke a license, and the exemption of pawn brokers from this act will be further considered in the order mentioned.

The act of the Legislature in question, as well as the one preceding it, is the outcome of well known extortionate practices of money lenders upon the suffering public. Skilful evasion of the previous law by those who determined to evade the spirit while they conformed to the letter of the statute doubtless led the General Assembly to include in this enactment more stringent and comprehensive provisions. And this, not because all dealers in this money traffic were unscrupulous and oppressive, but because some were. The necessity for protective legislation existed. It is apparent from the terms of the law in question that the Legislature believed that the so-called plain note device enabled the extortionate money loaner to ply his trade to the discredit of the more scrupulous and to the injury of his debtor.

Extreme methods to collect excessive interest on these plain notes could easily be employed against the poor and necessitous classes, ignorant of their legal rights and overawed by the personality of their creditor and the consciousness of obligation to him. The inclusion of the plain note in this act, therefore, prevents extortion that might be practiced. Upon these considerations, I think this provision of the law is not unconstiutional but clearly within the discretion of the Legislature.

The two provisions of the statute quoted giving the superintendent of banks authority to revoke licenses would seem to be *in pari materia* and should be construed together. When so considered it would appear to be a proper construction to hold that said superintendent might, in his discretion, revoke a license after a first conviction, especially in an aggravated case, while after a second conviction the law requires him absolutely to revoke. Be this as it may, however, if the provision in Section 6346-2, standing alone, is unconstitutional as an arbitrary and improper bestowal of power upon the superintendent of banks as claimed, this can not avail the petitioner because this provision then would necessarily be considered an independent one, and not so connected with the other provisions of the act as to be a substantive part thereof, and therefore might be excluded without rendering the remainder void. The act itself provides for the elimination of parts thereof found obnoxious to the Constitution without affecting what is left, and this is clearly a proper rule to be adopted in this instance, whatever might be the rule in a different case.

The last and more difficult question relates to the exemption of pawn brokers. This statute permits a licensee thereunder to loan on pledge of chattels although this is not his usual or principal business. He is not permitted to collect interest in advance. The loan on pledge was doubtless inserted by the Legislature in order to prevent a resort to this method by unscrupulous lenders to evade the law if framed without this provision. The pawn broker has come down to us through the centuries. He has long been under regulation of law and is now. He is defined in our statute as one who "lends money on deposit or pledge of personal property or purchases personal prop-

erty or choses in action on condition of selling them back again at a stipulated price'' (Section 6338, General Code). He must be ''a person of good moral character'' (Section 6339, General Code). He may be punished criminally for any violation of law relating to pawn brokers (Section 2400, General Code). Upon such conviction the mayor must revoke his license (Section 6346, General Code). It is a well known fact that loans by pawn brokers are usually of small amounts upon articles of no great value to reckless or improvident persons, with interest deducted in advance. This is the pawn broker's only business. Upon this branch of the case the contentions center upon the question as to whether or not the classification made by this statute under the circumstances violates the equal protection clauses of the federal and state Constitutions.

The manifest purpose of this law was to regulate and control a business which the Legislature considered injurious to the public welfare. The pawn broker was already under control of stringent laws applicable only to him, sufficient, it must be assumed, in the opinion of the Legislature to protect the public.

''Classification must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis.'' *Connolly* v. *Company,* 184 U. S., 560.

''The Legislature of a state has a wide range of discretion in classifying objects of legislation; and even if the classification be not scientifically nor logically appropriate, if it is not palpably arbitrary and is uniform within the class, it does not deny equal protection.

''Legislation may recognize degrees of evil without denying equal protection of the laws.'' *Company* v. *Martell,* 222 U. S., 225.

An act of the Legislature of New Jersey requiring persons making loans on pledges of personal property to obtain a license, but excluding pawn brokers, was held constitutional. *Dunn* v. *Hoboken,* 85 N. J. L., 79.

The Legislature of Pennsylvania passed a law licensing and regulating private banking and providing penalties for the violation thereof, but exempting from the operation of the act state

banks, national banks, hotel keepers, express companies, bankers who filed bonds of $100,000, brokers, and especially persons, firms, partnerships and incorporated associations engaged in private banking continuously in the same locality for seven years, and not engaged in the sale, as agent or otherwise, of railroad or steamship tickets, as were the private banks amenable to this act. This classification was held proper. *Commonwealth* v. *Grossman*, 248 Pa., 11.

The board of supervisors of Spotsylvania county, Virginia, in the exercise of lawful authority adopted a regulation fixing the width of tires of six, four and two-horse wagons at six, four and three inches in width respectively, which regulation applied only to lumber and tie haulers, all other haulers being left without regulation. Held not to be class legislation, but a proper classification. The court in deciding the case says:

"When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed." *Polglaise* v. *Commonwealth*, 114 Va., 850.

An act of the Legislature of Indiana provided the width of entrances to coal mines, but exempted block coal mines from the provisions of the act. *Held,* a classification within the discretion of the Legislature and constitutional. *Barrett* v. *Indiana*, 229 U. S., 26.

The Legislature of Alabama enacted a law taxing those selling or delivering sewing machines in each county where sold or delivered, but exempted merchants selling same at their regularly established places of business. This classification was sustained. *Sewing Machine Company* v. *Brickell*, 233 U. S., 304.

Other cases might be cited upon this question of proper classification, uniformity of operation, class legislation, as well as other claims in briefs of counsel; but it is apparent from those cited that differences real are generally held sufficient to justify legislative classification. Substantial differences between a licensee and a pawn broker, as regulated by the laws applicable to each, it seems to me very clearly exist.

Upon full consideration of the questions involved in this case, with the aid of the very able briefs that have been handed up, I have arrived at the conclusion that the classification made by the statute in question is fair and reasonable, based upon substantial differences, and within the discretion of the General Assembly.

Writ dismissed.