# Richmond

## HERBERT FLAX v. CITY OF RICHMOND.

March 7, 1949.

Record No. 3453.

Present, All the Justices.

The opinion states the case.

*Charles W. Crowder* and *M. J. Fulton,* for the plaintiff in error.

*J. E. Drinard* and *Henry R. Miller, Jr.,* for the defendant in error.

MILLER, J., delivered the opinion of the court.

This writ of error brings before us for review a judgment of the Hustings Court of the city of Richmond denying the application of Herbert Flax for issuance of an order and certificate authorizing and allowing him to be licensed as a pawnbroker. He will be called the petitioner, in accordance with his position in the lower court, and the city of Richmond will be referred to as defendant.

Section 191 of the Tax Code of Virginia defines a pawnbroker and, among other things, prescribes the qualifications required of an applicant for a State license and the conditions under which it may be issued. Its material provisions in this respect are:

"The hustings or corporation court of any city, and the circuit court of any county, may from time to time, grant a license to any citizen of the United States who shall produce satisfactory evidence of his good character, to exercise or carry on the business of a pawnbroker in his city or county, which license shall designate the building in which said person shall carry on said business; and no person shall exercise or carry on the business of a pawnbroker without being duly licensed by the hustings or corporation court of the city, or circuit court of the county in which he may desire to carry on said business, nor in any other building other than the one

designated in said license, except by consent of the court which granted the license, * * * ."

Acts of the General Assembly, 1944, ch. 96, p. 120, sec. 191a1 of the Tax Code (1948 Supplement to the Code of Virginia, 1942 (Michie)), authorized counties, cities and towns to limit the number of pawnshops to be operated therein. This enabling act delegating authority to the localities reads:

"In addition to all limitations and restrictions and notwithstanding any other relevant provisions of section one hundred and ninety-one or of any cognate section of the Tax Code of Virginia, the governing body of any county, city or town may limit by resolution or ordinance the number of pawnshops that may be operated at any one time within the territorial limits thereof, and the circuit court of any county or the hustings or corporation court of any city which has established by resolution or by ordinance any such limit as to the number of pawnshops therein shall have no authority to grant any license, State or local, to any pawnbroker after the commissioner of the revenue or other tax assessing officer of the county, city or town over which it has jurisdiction for the issuance of such licenses has filed with the court a statement to the effect that the number of licensed pawnshops within the county, city or town has reached the maximum number of pawnshops authorized to be operated therein according to resolution or ordinance of its governing body, unless and until the number has been reduced below the maximum so prescribed; provided that nothing in this section shall be construed as authorizing any county, city or town to deprive any licensee of his license, who had a license in force on February fifteenth, nineteen hundred and forty-four."

Pursuant to this statute, the council of the city of Richmond enacted an ordinance effective January 1, 1948, which prescribed the amount of the city license tax and limited the number of pawnshops to be licensed in the city to twelve. Its relevant part is:

"(b) Not more than twelve (12) places in the city of Richmond shall be licensed where the business of a pawn-

broker including a pawnbroker's sales may be conducted, and no license shall be granted to conduct a pawnshop or pawnbroker's sales store in the city of Richmond, except to a person who is a qualified voter of the city of Richmond, or to a concern or corporation whose managing agents in the city of Richmond are qualified voters thereof, nor shall any such license be granted to any such voter, concern or corporation, except upon a certificate of the director of public safety, and of the hustings court of the city of Richmond or the judge thereof in vacation, which shall explicitly state whether the person applying therefor is a proper person to conduct such business and whether the place where the business is proposed to be conducted is a proper and suitable place, and whether such applicant has theretofore complied with the laws governing such business, so far as the records of the police department and of the hustings court show, if the applicant has theretofore engaged in such business. No license shall be granted to any person to operate or conduct more than one pawnshop or pawnbroker's sales store in the city of Richmond; provided, however, this provision shall not apply to any person who owns and is licensed to operate or conduct more than one pawnshop or pawnbroker's sales store in the city of Richmond on the date this ordinance becomes effective but no license shall be granted after the effective date of this ordinance to any such person to operate or conduct any additional pawnshop or pawnbroker's sales store in excess of the number of pawnshops or pawnbroker's sales stores operated or conducted by any such person on the date this ordinance becomes effective." (Richmond City Code, section 10.266, paragraph (b), approved December 23, 1947.)

On February 3, 1948, petitioner, a resident and qualified voter of the city of Richmond, filed his application and petition in the Hustings Court of the city of Richmond, the purpose of which was to secure issuance of an order declaring his fitness and right to be licensed as a pawnbroker, approval of the place in which the business was to be conducted and the issuance of the license. On that day he offered to make

payment of the license tax required. The defendant appeared and opposed issuance of the certificate and license. It relied upon the provision of the ordinance enacted pursuant to section 191a1 of the Tax Code limiting the number of pawnshops to twelve and the conceded fact that the quota was already filled.

The evidence presented established the good character and fitness of appellant and the fitness of the place where the business would be conducted; in short, the requirements as to personal qualifications and location of the proposed business imposed by the ordinance and by section 191 of the Tax Code were met. The issuance of the certificate and license was refused solely because the ordinance forbade the licensing of any additional pawnshops when "there were twelve places duly licensed as pawnshops in the city."

There are eight assignments of error. They may be consolidated and set forth as follows:

Petitioner contends that—

1. The effect of the ordinance enacted pursuant to the authority given by section 191a1 of the Tax Code is to grant to twelve pawnbrokers special and exclusive rights and deny petitioner equal opportunity and protection of law and deprive him of an inherent and common right to engage in a lawful business enjoyed by others. He says the statute and ordinance both violate section 1 of the Constitution of Virginia and the Fourteenth Amendment to the Constitution of the United States and are therefore void.

2. If section 191a1 of the Tax Code is valid, then the ordinance is in conflict therewith and also in conflict with section 191 and void.

3. The effect of section 191a1 of the Tax Code is to allow localities to enact legislation creating and permitting trusts and monopolies which is violative of section 165 of the Constitution of Virginia and in conflict with sections 4722 (5) and 4722 (6) of the Code of Virginia which put in operation that constitutional mandate.

4. The court erred in admitting and excluding certain evidence.

Defendant insists that the pawnbroker business is affected with a public interest and of such character as to demand strict regulation, and that the municipality, in the exercise of its police powers given in its charter and by general law, is cearly authorized to limit the number to be licensed. It further says that neither the Constitution of Virginia nor the Constitution of the United States guarantees the unrestricted privilege to all persons to engage in all businesses; that exclusive privileges in certain types of occupations may be lawfully granted to a citizen by the legislature, and that the classification, by limiting the number of pawnbrokers to twelve, is not arbitrary because a state of facts may reasonably be conceived to justify and sustain it. The defendant also asserts that the questioned legislation by the State and city constitutes only reasonable exercise of police power, and that the power to limit the number of pawnshops is specifically granted to the city by the statute and no provision of the ordinance conflicts therewith. In conclusion, it says that no improper ruling was made in the admission and rejection of evidence.

Under the broad police powers delegated to the municipality, it is authorized to enact legislation that will promote the general welfare of its inhabitants. The City Charter, (Acts of General Assembly, 1936, ch. 240, p. 391), which was in force at the date of the passage of the ordinance in question, provides, among other things:

Sec. 19. "The Council of the City of Richmond shall have the power to enact suitable ordinances to secure and promote the general welfare of the inhabitants of the city, by them deemed proper for the safety, health, peace, good order, comfort, convenience and morals of the community; * * *."

Those powers are now carried into sections 2.01 and 2.04 of the present charter which became effective September 1, 1948, Acts 1948, ch. 116, p. 175. In addition, subsection (r) of section 2.04 expressly provides that the city shall have power, "to regulate the sale of goods, wares or merchandise at auction; regulate the conduct of and pre-

scribe the number of pawnshops and dealers in second-hand goods, wares and merchandies; * * *."

■ Though this express charter provision was not in effect when petitioner's application for license was denied, or when the ordinance under which it was refused was enacted, yet it now constitutes an express affirmance in the charter of what had previously been authorized by general law in section 191a1 of the Tax Code.

Under section 62 of the City Charter, Acts 1938, ch. 339, p. 533, the licensing powers of the city are broad. It reads, in part: "The council may grant or refuse licenses and may prohibit the conduct of business without such a license, and may require taxes to be paid on such licenses to all business which cannot, in the opinion of the council, be reached by the ad valorem system. * * *"*

We find further express power given to cities and towns by section 296 of the State Tax Code to require licenses and impose regulations upon a business already licensed by the State. It reads, in part, as follows:

"In addition to the State tax on any license, the council of the city or town may, when anything for which a license is so required is to be done within the city or town, impose a tax for the privilege of doing the same, and require a license to be obtained therefor; and in any case in which they see fit, require from the person licensed, bond, with sureties, in such penalty and with such condition as they may deem proper or *make other regulations concerning the same.*" (Italics supplied.)

■ That conducting a pawnshop falls within that class of business activities wherein rigid regulation under state or municipal police power is justified and permitted is universally recognized. 40 Am. Jur., "Pawnbrokers, etc.", sec. 4, p. 691; 48 C. J., "Pawnbrokers", page 561; 19 R. C. L., "Municipal Corporations", sec. 163, p. 861; *Grand Rapids* v.

---

*This provision in substantially similar, if not broader, language in now contained in sections 2.02 and 2.07 of the present charter, Acts 1948, ch. 116, p. 175.

*Braudy*, 105 Mich. 670, 64 N. W. 29; *Levison* v. *Boas*, 150 Cal. 185, 88 P. 825, 12 L. R. A. (N. S.) 575.

■ Imposition of regulatory conditions in the interest of the public as a condition to the grant of a State or municipal license is well recognized. McQuillen Municipal Corporations, Vol. 3, 2nd Ed., sec. 1125; 40 Am. Jur., sec. 8, p. 695; 19 R. C. L., "Municipal Corporations", secs. 256, 258, pp. 957, 959; 33 Am. Jur., "Licenses", sec. 17, p. 336.

■■ The imposition of license taxes is often solely for the purpose of revenue, but it is sometimes for the purpose of regulation and revenue. 33 Am. Jur., "Licenses", sec. 7, p. 330. Under the police power of the State, the right to impose conditions and restrictions upon this character of business is limited only to the extent that it must be subject to reasonable classification.

In 33 Am. Jur., sec. 17, p. 336, the principle is thus announced:

■ "It is well settled that the state under its police power has the right to regulate any business, occupation, trade or calling in order to protect the public health, morals, and welfare, subject to the restriction of reasonable classification. This power to regulate includes the power to license; and it is the settled general rule that to protect the health, morals, and welfare of the public a state can license an occupation, trade or calling. Where the business or vocation is one of a nonuseful nature, or one likely to develop into a nuisance, the state may, in the exercise of its police authority, license or absolutely prohibit it as regard for the welfare of the community may seem to justify. * * *"

That Virginia is in full accord with these principles is made manifest by the decision in *Elsner Bros.* v. *Hawkins*, 113 Va. 47, 73 S. E. 479, Ann. Cas. 1913D, 1278. In sustaining an ordinance enforcing a restriction and imposing regulations upon the business of a pawnbroker, at page 49, the court said:

"The business of pawnbrokers, because of the facility it furnishes for the commission of crime and for its con-

cealment, is one which belongs to a class where the strictest police regulation may be imposed. This is shown by our legislation, both State and local, on the subject, and by the adjudications of courts."

It is well within the class of business activities which are directly affected with a public interest, and regulation is not prohibited, but necessary.

The want of municipal authority to pass an ordinance to limit the number of pawnbrokers disclosed in the case of *Roanoke* v. *Land*, 137 Va. 89, 119 S. E. 59, was remedied by the enactment of section 191a1 of the State Tax Code. And the objectionable feature of the ordinance held unconstitutional in *Assaid* v. *Roanoke*, 179 Va. 47, 18 S. E. (2d) 287, is not here present. That ordinance permitted a license for a pool room to be granted but provided, "This license shall be a personal privilege and shall be granted and transferred only upon the order of the City Manager."

After discussing and quoting from the cases of *Yick Wo* v. *Hopkins*, 118 U. S. 356, 6 S. Ct. 1064, 30 L. Ed. 220, and *Thompson* v. *Smith*, 155 Va. 367, 154 S. E. 579, 71 A. L. R. 604, here relied upon by petitioner, the court concluded that the provision violated section 1 of Article One of the Virginia Constitution and the Fourteenth Amendment to the Constitution of the United States. The vice in the regulation and condition imposed was two-fold. It not only undertook to grant to the City Manager wholly arbitrary powers—final and unreviewable—but also to "delegate legislative authority to a ministerial officer."

Neither the State statute nor the city ordinance here assailed undertakes to give arbitrary power or delegate legislative authority. The power here granted merely permits the exercise of a reasonable discretion upon a factual basis sufficient to sustain the action to be taken and fully justified when imposed for the regulation of a business of this character. 12 A. L. R. 1435; 33 Am. Jur. sec. 60, p. 378; *Gundling* v. *Chicago*, 177 U. S. 183, 20 S. Ct. 633, 44 L. Ed. 725; and *Taylor* v. *Smith*, 140 Va. 217, 124 S. E. 259.

The right of an individual to engage in a lawful business may not be arbitrarily denied to him and granted to another under the guise of regulation. That principle was succinctly but clearly stated by Justice Harlan in *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540, at p. 558, 22 S. Ct. 431, 46 L. Ed. 679:

"The State undoubtedly has the power, by appropriate legislation, to protect the public morals, the public health and the public safety, but if, by their necessary operation, its regulations looking to either of those ends amount to a denial to persons within its jurisdiction of the equal protection of the laws, they must be deemed unconstitutional and void."

However, it is not now open to question that the business of pawnbroker is such as to place it in that category which justifies police control and supervision, limited only by the requirement that the classification made does not constitute arbitrary discrimination. If the body in which rests the power of legislation deems it necessary to restrict the number of such business establishments to promote the public welfare, and the classification made is to limit the number to those already engaged in that business as of a designated time, the exercise of that discretion constitutes regulation and control and not unlawful discrimination or prohibition as those terms are used.

The ordinance in question prevents petitioner from securing a license and conducting a business of a pawnbroker at this time, yet it does not amount to an absolute prohibition or unlawful discrimination. It is a mere regulation, for here the character of the business and the public interest therein justify the limitation of the number of licenses, and the resultant exclusion of petitioner and others similarly situated is but incidental. The primary purpose of the grant is not for the grantee's benefit, but to protect the public interest and to promote the public welfare. The classification made, which in this instance is the awarding of licenses to the twelve already doing business, is a reasonable

regulation and the limit in number is in the interest of the public.

When occupations are likely to become inimical to public welfare unless the number is limited by law, the police power may be rightfully exercised to restrict the number, for then a reasonable· basis exists for the classification made, and there is justification for the incidental denial of full enjoyment of the privilege by those not within the classification. 12 C. J., secs. 832, 841, pp. 1113, 1122; *Slaughter House Cases,* 16 Wall. (83 U. S.) 36, 21 L. Ed. 394; *Plumb* v. *Christie,* 103 Ga. 686, 30 S. E. 759, 42 L. R. A. 181; *Rochester* v. *Gutherlett,* 211 N. Y. 309, 105 N. E. 548; *Rast* v. *Van Deman, etc., Co.,* 240 U. S. 342, 36 S. Ct. 370, 60 L. Ed. 679, Ann. Cas. 1917B, 455; *Decie* v. *Brown,* 167 Mass. 290, 45 N. E. 765; *Kizee* v. *Conway,* 184 Va. 300, 35 S. E. (2d) 99, and *Danville* v. *Hatcher,* 101 Va. 523, 44 S. E. 723.

The State statute, section 191 of the Tax Code, does not expressly or by implication undertake to oust the municipalities from imposing further restrictions upon the grant of the license. On the contrary, it contemplates and expressly authorizes further legislation. Additional reasonable conditions or restrictions not in conflict with the statute are not prohibited. 19 R. C. L., sec. 110, p. 803; *Provident Loan Soc.* v. *City and County of Denver,* 64 Colo. 400, 172 P. 10; *Medias* v. *Indianapolis,* 216 Ind. 155, 23 N. E. (2d) 590, 125 A. L. R. 590; *Ex parte Hoffman,* 155 Cal. 114, 99 P. 517.

The requirements and conditions imposed by the ordinance that a licensee be approved by the director of public safety as "a proper person to conduct such business," and that he be "a qualified voter of the city of Richmond," are reasonable and justified by defendant's charter and by general law. *Wright* v. *May,* 127 Minn. 150, 149 N. W. 9, L. R. A. 1915B, 151.

A further and all-sufficient answer to the contention of petitioner in this regard is the fact that he is a "qualified voter" and the denial of the license was solely because the quota of licensees was filled; thus the provisions, whether

valid or not, are not open to question by him. *Gorieb* v. *Fox,* 274 U. S. 603, 47 S. Ct. 675, 71 L. Ed. 1228, 53 A. L. R. 1210.

Petitioner insists that the decision of *Norfolk Motor Exch.* v. *Grubb,* 152 Va. 471, 147 S. E. 214, 63 A. L. R. 310, sustains the contention that section 191a1 of the Tax Code is violative of section 165 of the Virginia Constitution.

This section of the Constitution is not self-executing. It directs the legislature to "enact laws preventing all trusts, combinations and monopolies, inimical to the public welfare." Pursuant to that mandate the General Assembly enacted sections 4722 (5) through 4722 (21), inclusive, which constitute Chapter 185A of the Code of Virginia, 1942 (Michie). Sections 4722 (5) and (6) define trusts and monopolies deemed inimical to the public interest and section 4722 (21), among other things, provides that " * * * the act shall apply only to those trusts, combinations and monopolies which are unreasonable and inimical to the public welfare, as hereinbefore defined, and are prohibited and penalized under the provisions of any law of the United States, or would be prohibited and penalized under the provisions of any law of the United States, if their activities extended to interstate as well as intrastate commerce."

It is sufficient to say that the situation here presented and of which petitioner complains does not fall within the terms of trusts, combinations and monopolies as defined in the act. And the further fact that the legislature, in whose discretion rests the power to determine what is inimical to the public welfare, has expressly empowered the defendant to limit the number of pawnshops within the city is convincing proof that it does not deem such municipal legislation violative of Chapter 185A of the Code of Virginia, 1942 (Michie).

We also find that the decisions upon this subject recognize that when justified under the police power, the grant of exclusive privileges to limited numbers and even to one person or corporation does not fall within the ban of what is termed a trust, combination or monopoly under State or

Federal law. This principle was recognized in the *Slaughter House, Cases, supra,* and is stated thus in 33 Am. Jur., sec. 23, p. 344:

"It is generally recognized that, except where justified under the police power, license laws creating monopolies in the ordinary businesses or callings of life in which every citizen has a right to engage on terms of equality are invalid. * * * It is a rule, however, that if reasonable facilities for engaging in the business are given, regulations restricting it within the police power, or imposed out of regard for the health or welfare of the community, do not constitute a prohibition or illegal restraint of trade, or a monopoly."

See also, 6 R. C. L., sec. 252, p. 267.

It is clear that no trust or monopoly forbidden by law here exists.

We find no error in the court's ruling upon the admission of testimony.

For the reasons herein stated, the order of the trial court is affirmed.

*Affirmed.*